## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### Case No. _____–CIV.(_____)

_____
)
Pamela Carvel,                                  )
as Delaware Ancillary Administrator             )    **COMPLAINT**
   for Agnes Carvel Estate,                )
as Member for Thomas and Agnes Carvel Foundation )
     Plaintiff                        )
    v.                               )
                                                )
William Griffin                                 )
Marie Abplanalp                                 )
Salvatore Molella                               )
Robert Davis                                    )
    and                            )
John/Jane Doe 1-20                              )
Doe Corp. 1-20                                  )
    Defendants                     )
_____)

## COMPLAINT FOR CONTINUING CONSPIRACY TO VIOLATE
## CONSTITUTIONAL RIGHTS & COMMIT FRAUDS

Pamela Carvel, appearing *pro se*
PLAINTIFF
28 Old Brompton Road, Suite 158
London SW7 3SS England

US tel/fax  1 954 524 1909

# TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

NATURE OF ACTION  . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . .  2

FEDERAL JURISDICTION & VENUE  . . . . . . . . . . . . . . . . . . . . . . . . 3

PARTIES . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . .6

CONTINUING CONSPIRACIES TO DEFRAUD . . . . . . . . . . . . . . .. .8

BRIEF BACKGROUND . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . .11

INTIMIDATION OF "WHISTLEBLOWERS" . . . . . . . . . . . . . . .. . . .12

CONVERSION OF CARVEL SALE PROCEEDS . . . . . . . . . . . . . . ..14

PHONY UNITRUST . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . 17

HUDSON VALLEY BANK'S INCESTUOUS RELATIONSHIPS . . . . .  19

DEFENDANT'S STOLE $10 MILLION PROPERTY FROM CHARITY
AND FROM THE ESTATE . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . 23

APPARENT BRIBE VIS HUDSON VALLEY BANK LOANS . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . .28

## <u>TABLE OF CITATIONS</u>

*Blacker v. Thatcher*, 145 F. 2d 255 certiorari denied 324 U.S. 848. . . . . . . . 5

*Lawrence v. Nelson*, 143 U.S. 215, 222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Leighton v. Roper*,
300 N.Y. 434; 91 N.E.2d 876; 1950 N.Y.18 A.L.R.2d 537 . . . . . . . . . .   5

*Markham v. Allen*, 326 U.S. 490, 494. . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Pufahl v. Parks*, 299 U.S. 217. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Security Trust Co. v. Black Riv. Nat. Bank,* 187 U.S. 211. . . . . . . . . . . . . . . 5

*Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33. . . . . . . . . . 5

12 *Del. C.* 3802(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 *U.S.C.* 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,10

18 *U.S.C.* 241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 8

18 *U.S.C.*242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 8

18 *U.S.C.* 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,10,12

18 *U.S.C.* 641 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 *U.S.C.*1111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

18 *U.S.C.*1117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 9

18 *U.S.C.* 1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10

18 *U.S.C* 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 9,10

18 *U.S.C* 1344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 9,10

18 *U.S.C* 1346 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

18 *U.S.C* 1512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

18 *U.S.C* 1591 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

18 *U.S.C* 1951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 *U.S.C* 1956 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 *U.S.C* 1957 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 *U.S.C* 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

18 *U.S.C* 1962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

18 *U.S.C.*1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 10

18 *U.S.C.* 1965 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

18 *U.S.C.*2314 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

18 *U.S.C.*2315 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

18 *U.S.C.*ch. 95 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

18 *U.S.C* ch..96 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

26 *U.S.C.*7201 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

28 *U.S.C.* 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

28 U.S.C. 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

42 *U.S.C.* 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 8, 10

42 *U.S.C.* 1982 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 8, 10

42 *U.S.C.* 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

42 *U.S.C.* 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8,10

42 *U.S.C.* 1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8,10

42 *U.S.C.* 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*U.S.C. Title* 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*I.R.C.* 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*I.R.C.* 2056 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*I.R.C.* 2523 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Revenue Procedures 89-20. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Revenue Procedures 89-21. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Revenue Procedures 90-30. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Revenue Procedures 90-31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Treasury Regulation Section 25.2702-(c)(1) . . . . . . . . . . . . . . . . . . . 17

*U.S. Constitutional Amendments* I . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*U.S. Constitutional Amendments* V . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*U.S. Constitutional Amendments* XIV . . . . . . . . . . . . . . . . . . . . . . . . 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### Case No. _____–CIV.(_____)

_____
)
Pamela Carvel,                                      )
as Delaware Ancillary Administrator                 )     **COMPLAINT**
   for Agnes Carvel Estate,                     )
as Member for Thomas and Agnes Carvel Foundation )
          Plaintiff              )
        v.                        )
                                                    )
William Griffin                                     )
Marie Abplanalp                                     )
Salvatore Molella                                   )
Robert Davis                                        )
      and                         )
John/Jane Doe 1-20                                  )
Doe Corp. 1-20                                      )
      Defendants                  )
_____)

## COMPLAINT FOR CONTINUING CONSPIRACY TO VIOLATE
## CONSTITUTIONAL RIGHTS & COMMIT FRAUDS

Plaintiff Pamela Carvel, as personal representative and Delaware Ancillary Administrator for the Agnes Carvel Estate ("Estate"), London, England, and as sole Member of the Thomas and Agnes Carvel Foundation, appearing *pro se* for her complaint avers:

1

## NATURE OF ACTION

1.    This action by Plaintiff arises from violation of U.S. law and violations of state law of Delaware, New York, and Florida involving continuing conspiracies of two or more persons in

i)    acts to defraud the U.S. and harm its citizens by tax fraud, money laundering, identity theft and other fraudulent activities (18 *U.S.C.* Sec. 371, 1341, 1343, 1344, 1346, 1512, 1961, 1964; 42 *U.S.C.* Sec. 1886; *U.S.C.* Title 26);

ii)    intentional elder abuse inflicted by the Defendants with the intent to cause death and steal property of Thomas and Agnes Carvel (18 *U.S.C.* Sec. 1117, 1591);

iii)    intentional violations of Constitutionally guaranteed rights with purpose of intimidating and harming victims Agnes Carvel and Pamela Carvel (18 *U.S.C.* Sec. 241, 242; 42 *U.S.C.* Sec. 1981, 1982, 1983, 1985(3);

iv)    apparent bribery of a New York State judge with the intent to deprive the Carvels of rights and property under the color of law and deprive them honest services (18 *U.S.C.* Sec. 201);

v)     other fraudulent acts with the intention to convert the identity and assets of the Carvels' private charities (American Institute of Health Foods, International Institute of Health Foods, Thomas and Agnes Carvel Foundation and possible others) for the personal profit for the Defendants and their co-conspirators.

2.     Plaintiff seeks an order of this District Court

i)     to identify, quantify and assess damages by Defendants inflicted on the Estate, its Delaware ancillary administrator, and the interests of legitimate charity;

ii)    to disaffirm all individual, representative, professional acts taken by Defendants to divert and fraudulently convert Carvel property and impersonate Carvel entities;

iii)   to recover misappropriated property estimated to be in excess of $300 million.

## FEDERAL JURISDICTION & VENUE

3.     District Court has jurisdiction under 28 *U.S.C.* 1331 for civil actions arising under the Constitution and laws of the United States; also under 18 *U.S.C.*1965; and 42 *U.S.C.* 1988.

4.    There exist questions of U.S. Constitutional law including (but not limited to)

i)    possible criminal intent and/or conspiracy to procure the deaths of Thomas, and later, Agnes Carvel during the commission of felonies;

ii)    to defraud and embezzle from the Carvel estates and charity;

iii)    to impersonate Carvel entities and abuse the Carvels' good name and reputation;

iv)    to steal and/or fraudulently convert Agnes Carvel's property to strangers;

v)    to threaten and cause financial damage to Pamela Carvel individually and as fiduciary for protecting and defending the rights to Agnes Carvel, an elder person, and asserting Agnes' testamentary intentions;

vi)    to transport stolen property of across state lines by mail or by wire; to negotiate stolen U.S. government instruments; and

vii)    to deny Agnes Carvel, her Estate and her fiduciary the fundamental, substantive and material rights to equal treatment, due process, and protection from violations of Constitutional rights. (*U.S.*

4

*Constitutional Amendments* I, V, XIV; 18 *U.S.C.* Sec. 241, 242, 1111, 1117, 1962, 1964, 2314, 2315, ch. 95, 96; 42 *U.S.C.* Sec.1983, 1985(3)).

5.    The Supreme Court of the United States has often reaffirmed the power of the Federal courts to take jurisdiction over executors and administrators without regard to the provisions of State statutes [*Leighton v. Roper*, 300 N.Y. 434; 91 N.E.2d 876; 1950 N.Y.18 A.L.R.2d 537; *Markham v. Allen*, 326 U.S. 490, 494; *Blacker v. Thatcher*, 145 F. 2d 255, certiorari denied 324 U.S. 848; *Pufahl v. Parks*, 299 U.S. 217; *Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33; *Security Trust Co. v. Black Riv. Nat. Bank,* 187 U.S. 211; *Lawrence v. Nelson*, 143 U.S. 215, 222].

6.    The largest claim (over $200 million) to recover assets of the Agnes Carvel Estate is in Delaware.  Therefore the largest theft of assets and greatest fraud against the Estate, its Delaware administrator, its beneficiaries and its creditors is in Delaware.  Delaware is the correct venue because the apparent frauds, including perjured statements to the Delaware Chancery and apparent bribery of a New York State judge by Defendants, were intended to prevent the recovery of the value of Agnes' Delaware corporate interests, the most substantial asset claimed by the Estate.  Defendants acts

5

that defrauded Agnes Carvel also defrauded Delaware, Delaware creditors and Delaware contract obligations owed by Agnes Carvel (12 *Del. C.* 3802(b)).  On information and belief a continuing conspiracy to deny funds to Agnes Carvel and the Delaware ancillary administration was intended to obstruct professional legal representation that is necessary, essential and indispensable for the Delaware ancillary administrator to carry out her fiduciary obligations and duties for Agnes Carvel, for the Estate's legitimate beneficiaries, for Delaware creditors and for the laws of Delaware and the United States.

## **PARTIES**

7.     Plaintiff is a citizen of the United Kingdom, having a mailing address of  Agnes Carvel Estate/Thomas and Agnes Carvel Foundation, 28 Old Brompton Road, Suite 158, London SW7 3SS England, United Kingdom.  Plaintiff is defined as a foreign citizen (*28 U.S.C. 1332 (c)(2))*.

8.     Defendant, William Griffin is a lawyer who on information and belief is a citizen of New York with a business address of 51 Pondfield Road, Bronxville, NY 10708. William Griffin is also chairman and a controlling shareholder in Hudson Valley Bank.

9. Defendant Marie Abplanalp Holcombe is a controlling shareholder in Hudson Valley Bank who on information and belief is a citizen of New York with a business address of 700 Nepperhan Avenue, Yonkers, New York 10702.

10. Defendant Salvatore Molella is an agent of Griffin and Holcombe who on information and belief is a citizen of Florida with a mailing address of 37035 Exuma Bay, Boynton Beach, FL 33436.

11. Defendant Robert Davis is a lawyer who on information and belief is a citizen of New York with a business address 430 East 57 Street, #9D, New York, New York 10022.

12. The Defendant's intentionally interfere with business relationships, contractual relationships, and obstruct the Constitutional rights of Agnes Carvel, the Estate, the Estate's Delaware administration, and the Estate's fiduciary, Pamela Carvel, in an attempt to prevent the Estate's pursuit of substantial Delaware claims to Agnes' assets, so that the Defendants may divert, to the Defendants' own profit and the benefit of their cohorts, all the assets of Agnes Carvel and the charities founded and funded exclusively by Thomas and Agnes Carvel,.

13.    Conspiracy in the conversion of assets, and oppression of the rights and the ability of Pamela Carvel to perform her fiduciary obligations, acts across state lines and may result in the identification of intentional civil and criminal acts in violation of Federal laws involving additional parities that may yet be identified. The Estate reserves the right to amend this complaint as necessary to include others.

## CONTINUING CONSPIRACIES TO DEFRAUD

14.    This action arises from a conspiracy by two or more Defendants against the Constitutionally guaranteed rights of Agnes Carvel as an elder person and charitable benefactor, and Pamela Carvel as Agnes' fiduciary (18 USC Sec. 241; 42 *U.S.C.* 1981, 1982, 1985, 1986 ), in deprivation of their rights under color of law (18 USC Sec. 242), including but not limited to substantive due process, equal treatment, right to own real estate and to make a contract.

15.    The Defendants continue to conspire over several years to threaten, intimidate, harm and intentional act to procure the death of Agnes Carvel, an elder person, who was a victim and witness.  The Defendants and their agents threaten Pamela Carvel with personal and financial jeopardy for being an informant to the New York State Attorney General and the U.S.

Attorney (resulting in felony convictions for financial frauds), and to the F.B.I. and the Criminal Investigation Divisions of the U.S. Internal Revenue Service and the U.K. Inland Revenue; and for remaining Agnes' sole advocate (18 *U.S.C.* Sec. 1512). The intent was to silence Agnes Carvel's prosecution of the Defendant's fraudulent actions and theft of restricted charitable donations made by Thomas and Agnes Carvel to private charities founded and funded exclusively by the Carvels. On information and belief the Defendants have information regarding the possible murder of Thomas Carvel (18 USC Sec. 1117), which matter is the subject of another court proceeding for exhumation to determine the cause of death because of a falsified death certificate.

16.    The Defendants collude in mail fraud (18 *U.S.C.* Sec.1341) and activities relating to wire fraud (18 *U.S.C.* Sec.1343) to further other financial institution frauds through Hudson Valley Bank where Griffin and Holcolmbe are two controlling shareholders (18 *U.S.C. S*ec. 1344) (Exhibit A-1).

17.    On information and belief the Defendants use Hudson Valley Bank to fraudulently convert real estate belonging to the Estate to the Defendant's agent and back to themselves (Exhibit A-6). On information

and belief, the Defendants forged, altered and fraudulently converted U.S. Treasury securities held in the Bank's name. On information and belief, the Defendants forged, altered and fraudulently constructed records to steal the identity of Carvel charities in order to control of multi-million dollars of charity funds. Defendants abused their control of Hudson Valley Bank to devise schemes to defraud and swindle to embezzle money by false pretenses using mail and wire to transport the proceeds of stolen Carvel property across state lines. (18 *U.S.C.* Sec.1341, 1343, 1346, 1956, 1957 ).

18.    Based on documents in the public record, Plaintiff asserts that Defendants used Hudson Valley Bank to provide alleged "loans" in the amount of $300,000 to apparently bribe Westchester County New York Surrogate's Court judge Anthony Scarpino at the same time as trials in Carvel estate matters were heard by Surrogate Scarpino, in which William Griffin was a witness seeking to divert Carvel real estate and cash to himself via one of the Carvels' charity (18 *U.S.C.* Sec. 201) (Exhibit A-21).

19.    Defendants conspired against Agnes Carvel, Pamela Carvel and against the United States to commit in tax fraud (18 *U.S.C.* Sec. 371) in the course of Defendants intentional acts to obstruct equal property rights under the law (42 U.S.C. 1981, 1982, 1985 (2), (3), 1986, 18 *U.S.C.* 1951, 1964).

On information and belief, the Defendants may be engaged in money laundering and the cover-up of the theft of Carvel assets for use by "investment bankers" with possible connections to suspected terrorists.

## BRIEF BACKGROUND

20.    Thomas Carvel was renowned for the "Carvel" soft ice cream franchise system and his genius for in-house advertisements for "Carvel" products. "Carvel" innovations and advertisements are archived at the Smithsonian Institution's National Museum of American History.

21.    Tom's wife Agnes died on August 4, 1998 while residing in London, England.  Agnes was a United Kingdom citizen since birth. The High Court of Justice for England and Wales admitted her last Will and Testament dated July 7, 1995 for probate without contest.  Pamela was appointed the sole executor and sole personal representative under that Will. That Will was never contested and remains in force.  The Will provide that anyone who harmed or litigated against Agnes Carvel in life, or litigated against her estate shall not inherit.

22.    Agnes never received one penny of income from Tom's estate as long as she lived (an estate allegedly valued at only $66 million, not the $250 million Tom estimated) in violation of the terms of Tom's alleged Last

Will, thereby creating tax fraud by the fraudulent elections of QTIP and marital deductions (I.R.C. 2056, 2523; 18 U.S.C. Sec. 371, 641; 26 U.S.C. Sec. 7201 et seq). Agnes' death from stroke was procured deliberately by stress from the fraudsters who stole control by forgery of charities the Carvels founded and funded. Agnes' death was to silence Agnes' accusations, some of which resulted in several felony convictions by the New York Attorney General.

## INTIMIDATION OF "WHISTLEBLOWERS"

23. Agnes and Pamela are the only fiduciaries in Carvel matters who are denied by Westchester Surrogate's Court, New York equal indemnification of legal fees and litigation expenses because they are also the only "whistleblowers" concerning criminal activities, including judicial misconduct. Carvel investigators assisted New York State Attorney Generals Abrams and Spitzer in felony convictions for financial fraudsters operating in connection with Thomas Carvel's estate (William Zuga (twice), Francis Zarro). The U.S. Attorney in another matter convicted another Carvel estate fraudster, William Fugazy, for perjury.

24. The Carvels also assisted the New York Attorney General in charity fraud investigations that forced the ouster of two alleged Carvel

charity managers for charity frauds and self-dealing grants, but not before the duo installed their "loyalist" cronies to pay the fraudsters' legal fees and to litigate against Agnes using restricted charitable gifts, thereby creating additional tax fraud (I.R.C. 501(c)(3)). The foundation imposters fear loosing control of misappropriated Carvel assets. The fraudsters' intention was stated in a manifesto for control of the "Thomas and Agnes Carvel Foundation" written on February 18, 1992 (Exhibit A-55 ) in the midst of the Attorney General's fraud investigations: removing Robert Davis and Mildred Arcadipane "**provides family with opportunity to assume control of Foundation, Estate and Agnes' assets.**" Nothing could more clearly demonstrate the **<u>intent</u>** to defraud Agnes Carvel of her assets in her lifetime and defraud the Carvels' legitimate charitable intentions for their estates. In the same document at #11, "Hudson Valley" [Bank] is listed generically as possible loyalist successor, i.e. anyone from Hudson Valley Bank can be counted on to stack the charity's votes against Agnes Carvel in her own charity.

25.    The week before Tom died he estimated the family worth to exceed $250 million in cash and real estate, of which approximately $200 million were the proceeds from the sale of jointly owned Carvel Corp. stock

(a Delaware corporation).  The week after Tom was found dead, Agnes was told there was less than $40 million and that virtually none of it belonged to her.  Agnes and Pamela also knew first hand that Tom and Agnes owned everything jointly with rights of survivorship, but deeds, stock and bank accounts were diverted by theft of records  or altered by forgery.

## CONVERSION OF CARVEL SALE PROCEEDS

26.    In November 1989, Thomas and Agnes Carvel were coerced, by circumstances created by their employees Robert Davis and Mildred Arcadipane, into selling their jointly owned stock in Carvel Corp. to "Investcorp", known as "investment bankers" for Bahranian money.  Recent research in England indicates ties to suspected terrorists, a large bank collapse, and a call in Parliament for a government investigation of Investcorp.

27.    Not one original document can be found for the sale of jointly owned Carvel Corp. stock on November 21, 1989.  No documents bear an ink signature of Tom or Agnes.  All three original stock certificates, all issued on January 13, 1986 to "Thomas Carvel and Agnes Carvel, Joint Tenants" remained in Agnes Carvel's possession (Nos. NB 853, 857,863). The stock certificates were never endorsed to transfer joint ownership at any

time.  No stock powers were used to transfer joint ownership.  Secretary Mildred Arcadipane or attorney Robert Davis signed many alleged sale documents instead of the Carvels, although neither fraudster had power of attorney to act on the Carvels' behalf.  Other documents have signature-only pages that do not match the preceding pages that alleged to contain agreement terms.  Although reference to payments by notes for approximately $100 million was found, such payments are totally missing. Money that should have been in two $20 million trust accounts at Hudson Valley Bank "disappeared".  U.S. Treasury Securities held in Hudson Valley Bank's name also could not be found; and those that were found had the ownership altered.

28.    The copies of stock sale documents, produced by the fraudsters after Thomas Carvel's death, allege a sale of only half the stock owned by Tom and Agnes, i.e. only 660,646 shares not 1,321,292 shares.  The missing 660,646 shares (No. NB 863) appear to constitute the missing $100 million that Thomas Carvel intended to investigate with his niece Pamela Carvel (who is a member of the Association of Certified Fraud Investigators in the U.S. and U.K.) before his suspiciously timed death occurred.    Tom's

falsified death certificate and possible murder is the subject of another proceeding to exhume his body to establish cause of death.

29.    Agnes Carvel, as surviving joint owner, was defrauded out of the alleged sale proceeds for Carvel stock by a series of fraudulent bank and trust transactions involving Hudson Valley Bank, Bank of New York (on probation for money-laundering violations), NatWest Bank, Barnett Bank and Defendants, who boast close personal relationships to the banks.

30.    Hudson Valley Bank, controlled by Griffin and Holcolmbe, allowed Arcadipane and Davis to fax instructions to move millions of Carvel money in and out of Tom, Agnes and Bruce Carvel's personal bank accounts without the knowledge or consent of Tom, Agnes or Bruce and without any "power of attorney" to act on any Carvels' behalf (18 U.S.C. Sec. 1343). Investigations by the New York State Department of Banking confirmed Pamela's discovery that Davis altered at least $4.75 million in U.S. Treasury Bills and Notes held by Hudson Valley Bank to appear to give Agnes ownership; but in actuality, Davis was covering up his previous manipulations of ownership title resulting in the theft of over $15 million sale proceeds in Hudson Valley Bank that belonged to Agnes as surviving joint owner.  When Pamela uncovered the theft, the $4.75 million that had

been allegedly transferred to Agnes was then fraudulently converted to a Florida trust without Agnes' knowledge. The Florida trustees then withheld the money from Agnes and her estate. The trustees, who were cohorts of Davis, Arcadipane and Griffin, obstructed further investigations into the theft. These Florida trustees pay themselves and their attorneys millions from Agnes' money to litigate against Agnes, while Agnes received nothing but the tax bill.

## **PHONY UNITRUST**

31.    After the sale of Carvel stock was allegedly agreed, Arcadipane and Davis backdated documents allegedly creating the "Thomas Carvel Charitable Remainder Unitrust" for deferring Carvel stock sale proceeds from capital gains tax (Treasury Regulation Section 25.2702-(c)(1); Revenue Procedures 89-20, 89-21, 90-30, and 90-31). Tom and Agnes Carvels' jointly owned stock certificates never surrendered or transferred their stock that was allegedly contributed to the "unitrust". No stock power was used to transfer the stocks. The "unitrust" was a sham to give Arcadipane and Davis power over Carvel money and power to obstruct the income payable to Tom and Agnes if they began asking questions (precisely what the fraudsters did to Agnes).

17

32.    The original trust allegedly contained eight trustees.  After Tom's death, Arcadipane and Davis alleged that four trustees, who were "Carvel" employees, had been removed leaving only Arcadipane, Davis and the two trustees who were the least knowledgeable about "Carvel" business affairs – Adele Alexander, Tom's niece and Mary Ellen Cerrato, the wife of a friend.  Arcadipane and Davis ran the trust without the knowledge or consent of the other two trustees.  Allegedly no records were kept.  When Agnes sought to remove Arcadipane and Davis as fiduciaries for fraud and demanded accountings from the trustees, Arcadipane, Davis and Cerrato cut off mandatory distributions to Agnes, but continued to use Agnes' money to pay their own legal fees to cover-up the phony trust creation and to litigate against Agnes' income rights.  The unitrust was a fraud intended to evade taxes and make the Carvels prisoners of the trustees. On information and belief, over $10 million was diverted from the alleged original funding of the trust ($24 million instead of $35 million).

33.    Agnes Carvel's ownership of approximately $200 million taxable proceeds of the sale of Carvel Corp. stock (a Delaware corporation), and subsidiaries retained by Tom in the sale, disappeared after Tom's death.

## HUDSON VALLEY BANK'S INCESTUOUS RELATIONSHIPS

34.    The trials began in Thomas Carvel's estate in September 2001. In October 2001, Hudson Valley Bank loaned Westchester Surrogate Scarpino $200,000. The accounting proceeding in Agnes Carvel's New York ancillary administration began in May 2005. In December 2004, Hudson Valley Bank loaned Surrogate Scarpino $100,000.  Surrogate Scarpino never disclosed these "loans" to the parties before him although William Griffin, chairman of Hudson Valley Bank and controlling shareholder, is alleged to be the "most knowledgeable" director who represents the Carvel-charity usurpers at trials; and Marie Abplanalp Holcombe, another controlling shareholder in the Bank, is alleged to be a Carvel-charity member and director.  Research thus far seems to indicate that these and other "loans" were excluded from mandatory financial disclosures.  Surrogate Scarpino signed Pamela Carvel's request for a subpoena duce tecum for alleged charity documents, but then Surrogate Scarpino retracted the subpoena when the fraudsters complained.

35.    The trial during which Surrogate Scarpino received a $200,000 "loan" followed by a $100,000 "loan" purported to make the "Thomas and Agnes Carvel Foundation" as controlled by Griffin, Holcombe and Molella,

creditor of the residue of Agnes Carvel's estate; however, the Surrogate turned over to the mere remainderman the **gross** of Agnes' real estate New York and Florida, valued at approximately $14 million.

36.    As soon as Thomas Carvel was dead, the business documents belonging to Agnes Carvel, and the many charities Thomas and Agnes founded and funded, were stolen from the Carvels' offices and moved to the Hudson Valley Bank Building.  Never to be returned.  Hidden from scrutiny demanded by Agnes or Pamela Carvel. The alleged foundation rented pricey offices in the Hudson Valley Bank Building since 1991.

37.    Evidence of Hudson Valley Bank manipulation of Carvel bank accounts and U.S. Treasury securities was the first fraud uncovered in Thomas Carvel's estate. The foundation usurpers fear loosing control of misappropriated Carvel assets. The fraudsters' intention was bluntly stated in the manifesto written on February 18, 1992 (Exhibit A-55).

38.    Hudson Valley Bank and its "owners" William Griffin, Robert Abplanalp and their co-conspirators stole control of the Carvels' private charities so as to abuse the Carvels' good name and assets to further the organized political and financial influence the bank generates in numerous ways. Upon Robert Abplanalp's death, his daughter Marie Abplanalp

20

Holcombe took his place as "Hudson Valley" representative as stated in the 1992 manifesto to maintain control against the Carvels.

39.    The bank also runs something called "Hudson Valley Bank's Business Development Board" (A-62) of which the bank itself says,

- "members benefit from their association with Hudson Valley Bank through networking opportunities and exposure for their businesses"

- "The Board of Directors looks to fill these positions with highly-qualified professionals, who can assist in achieving the Bank's goals." (emphasis added)

40.    James Landy, an officer of Hudson Valley Bank, is chairman of the board of St, Joseph's Medial Center.  Mathew Landy is James' cousin and the alleged office manager over one secretary of the alleged foundation, although the alleged foundation purports to not accept independent grant proposals.  It only makes grants proposed by "insiders".

41.    William Griffin, chairman of Hudson Valley Bank, major stock controller, and alleged foundation president, was "research counsel" to New York Lt. Gov. Malcolm Wilson. Wilson became the foundation usurpers' general counsel, and then alleged foundation member and director.  Wilson installed his buddy Griffin on the foundation as "loyalist" to bolster the phony votes (Exhibit A-57). Wilson was the "campaign chairman" for

21

Surrogate Emanuelli's unopposed "election". Surrogate Emanuelli turned a blind eye to all crimes committed against Agnes Carvel, withheld all mandatory income due Agnes Carvel to prevent her challenging the legitimacy of the foundation usurpers, and harassed Agnes until death resulted.

42. The Hudson Valley Bank Business Development Board also includes:

- Marc Oxman (A-66), who was installed as Guardian Ad Litem for Agnes Carvel is one such person who "assists in achieving the Bank's goals" along with Oxman's law partner Andrew Natale, Jr.(A-65). Oxman was hired to wipe out Agnes' claims and to cause Agnes' death by stress in London -- and so he did.

- Daniel Hollis (A-64) is partner to Stuart Shamberg who was attorney for the Westchester County Public Administrator who hijacked control of the Estate by perjury by the alleged foundation's lawyers in New York in November 1998 despite the probate in England in October 1998.

- Edward A. Sheeran (formerly) is Executive Director, Yonkers Industrial Development Agency ("IDA"), the agency that played a part in the phony St. Joseph Hospital grant where Griffin purchased a property only after

he knew his cronies in the alleged foundation approved a $2,000,000 purchase grant for a $700,000 parcel of land.  Over $1,300,000 disappeared along with a corner of the property that was a branch office of the Bank. The IDA then stepped in to provide financing.

- Michael Spicer (A-67) is President and CEO of St. Joseph's Hospital, recipient of numerous unaccounted-for grants.

- In 1982, the Bank and its vice president John Finnerty (who remains on the Business Development Board, A-64) faced and survived indictment for phony "loan" schemes and "various count of larceny and misapplication of property".

## DEFENDANTS STOLE $10 MILLION PROPERTY FROM CHARITY AND FROM THE ESTATE

43.    On October 6, 2006 William Griffin, who is not only the chairman of Hudson Valley Bank but one of the Banks controlling shareholders, alleged to act as the president of the "Thomas and Agnes Carvel Foundation" in order to sell Agnes Carvel's former residence in Ardsley, New York containing two parcels of land of approximately 16 acres (currently valued at **$10 million**) to a shell company belonging to Denis Amicucci, a relative of Griffin's law partner Paul Amicucci, for only

**$700,000** (A-6) and **$1.3 million** (A-9).  A similar insider sham transaction is suspected for Agnes' real estate in Florida.

44.    Daniel A. Amicucci formed the shell company, Chauncey Partners LLC, in March 2006.  Paul Amicucci is listed as part of Griffin's law firm Griffin, Coogan and Veneruso, P.C. (Exhibit A-60,61) and also appears to be the attorney in the firm of Walsh and Amicucci, LLP who act for other charities controlled by Griffin. Paul Amicucci is also listed among the "Hudson Valley Bank Business Development Board" that has an incestuous, covert political relationship to the Carvel estate manipulations in Westchester Surrogate's Court (Exhibit A-62)

45.    On that same day, October 6, 2006, the shell company returned control of the whole property back to Griffin through Hudson Valley Bank as an alleged lease assignment for security for an alleged US$1.3 million mortgage from Hudson Valley Bank (Exhibit A-12) where Griffin is not only chairman but a controlling shareholder along with alleged foundation director Marie Abplanalp Holcombe (Exhibit A-1).

46.    This same Ardsley property was appraised at **$1.1 million in 1990** when Thomas Carvel died (Exhibit A-59).  While all surrounding real estate has increased in value 300-400%, the Carvels' exclusive mountaintop

acreage property only increased about 82%. Agnes Carvel's other Westchester property, the first Carvel ice cream stand in Hartsdale, was also stolen from Agnes' estate and sold by Griffin in 2006 allegedly for $2.8 million to the owner of the current Carvel franchise. The property increased 375% from its 1990 appraised value of $600,000.

## APPARENT BRIBE VIA HUDSON VALLEY BANK LOANS

47.    Agnes Carvel's only adversaries for 17 years have been the foundation usurpers whose written stated intent is to prohibit Carvel control of Carvel assets (A-55). On the same document (#11;A-56) the acceptable "loyalists" to become successor members and directors is listed "Hudson Valley" generically, i.e. anyone from Hudson Valley Bank will be a loyalist to the foundation usurpers.

48.    As soon as Tom's was found dead, the usurpers moved to the Hudson Valley Bank Building. Soon thereafter the Bank's chairman and major controlling stockholder, William Griffin, was installed to impersonate a foundation member, director and officer. Soon again, the Bank's other major controlling stockholder, Robert Abplanalp, was also installed. When Abplanalp died, his daughter replaced him. She too is a major controlling stockholder in the Bank. After stealing the identity and control of the

Carvels' charities, Griffin and the Abplanalps abused Agnes' restricted charitable gifts to litigate to prevent Agnes from receiving any income. Westchester Democratic Chairman and politico Marc Oxman, who was inflicted on Agnes Carvel as guardian ad litem to stress her to death, is on the Hudson Valley Bank Development Board. The Board is described as a group to promote the Bank's interests. Pamela discovered that the Bank was involved in the wire transfers of funds without Tom or Agnes' consent, alterations of the ownership of U.S. Securities, and other bank frauds. The Bank asserts more control over Carvel money than any Carvel.

49.     Trials in the Carvel matters began on September 10, 2001, on October 1, 2001 Hudson Valley Bank gave Surrogate Scarpino a "loan" for $200,000 (A-40). On December 30, 2004, Hudson Valley Bank gave the Surrogate another "loan" for $100,000 (A-21). Neither of these loans were disclosed. The average citizen cannot know whether these "loans" are repaid by Surrogate Scarpino or just "written off" as a cost of doing business. Given Surrogate Scarpino's decisions favoring the foundation usurpers anainst Agnes, the sole intended beneficiary of everything, there is the appearance of impropriety, namely the appearance of bribery.

50.     The Surrogate placed no restraint whatsoever on disbursements by the executors in Thomas Carvel's estate, including the disbursement of assets belonging to Agnes Carvel held in the hands of Thomas Carvel's executors.  Legal fees were paid without prior or subsequent consent of the beneficiary or the court.  This freedom to draw down Carvel property at will remained with Tom's executors despite Agnes Carvel's warning that the executor's were engaging in fraudulent business practices with known fraudsters. This freedom to draw down Carvel property remained even after the FBI investigations and U.S. and New York Attorney Generals' prosecutions convicted William Zuga twice (2002, 2003) for real estate fraud, convicted attorney Francis Zarro (2004) for 13 felony counts of financial frauds, and convicted William Fugazy (1997) for bankruptcy perjury.  Several million dollars were lost to Agnes Carvel by Thomas' executors' collusion with these felons, BUT only the whistleblowers Agnes and Pamela Carvel were and are denied indemnification of legal fees from Thomas or Agnes' estate assets.

51.     It is clear enough that only strangers are becoming millionaires from Carvel money, and only the Carvels cannot equally be indemnified for fiduciary expenses to prosecute claims.  One-sided funding of litigation seen

in the light of $300,000 in undisclosed "loans" to the judge can demonstrate nothing other than the intent to fraudulently convert estate and trust assets away from the Carvels and their intended beneficiaries.

## CONCLUSION

52.    Only discovery can determine the extent of the conspiracy that exists here. Issues of violations of Constitutional rights to further fraudulent schemes and violations of U.S. laws are at the heart of this complaint. Only Delaware is far enough removed from the political quagmire in New York to provide a fair platform for discovery. Delaware holds the most significant asset claims of the estate if a conspiracy denied Agnes Carvel the proceeds of the sale of jointly owned Carvel Corp. stock.  The overwhelming extent of the game played between Griffin, Abplanalp, Molella and Surrogate Scarpino is merely touched on in these pages. The same crimes that plagued the Carvels are eating away at beneficiaries in other estates every day. Some means to enforce Constitutional rights in Surrogate's Courts must be found.

WHEREFORE, Plaintiff Pamela Carvel, Delaware ancillary administrator for the Agnes Carvel Estate in London, England, and sole Member of the Thomas and Agnes Carvel Foundation seeks orders by the District Court:

i)    for discovery to identify, quantify, assess and assert damages inflicted by Defendants on the Estate, its Delaware ancillary administrator, and legitimate charities;

ii)    to disaffirm all individual, representative, professional acts taken by Defendants to divert and fraudulently convert Carvel property and impersonate Carvel entities; and

iii)    to recover misappropriated property estimated to be around $300 million, and triple damages thereon.

Signed this 11 day of May 2007

Agnes Carvel Estate
by Pamela Carvel, appearing *pro se*
28 Old Brompton Road, Suite 158
London SW7 3SS England

US tel/fax  1 954 524 1909

29

07-273

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
PAMELA CARVEL, DELAWARE ANCILLARY ADMINISTRATOR FOR THE AGNES CARVEL ESTATE, & MEMBER OF THE THOMAS & AGNES CARVEL FOUNDATION

**DEFENDANTS**
WILLIAM GRIFFIN, MARIE HPLCPMBE, SAL MOLELLA ROBERT DAVIS
DOE 1-20; DOE CORP 1-20

(b) County of Residence of First Listed Plaintiff  LONDON, ENGLAND
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  WESTCHESTER, NY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

U.S. TEL/FAX FWD

(c) Attorney's (Firm Name, Address, and Telephone Number) 954 524 1909

Pamela Carvel, appearing pro se
28 Old Brompton Rd, Ste. 158, London SW73SS, England

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Med. Malpractice | ☐ 625 Drug Related Seizure     28 USC 157 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability  ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &     Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander  ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability     Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product  **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability  ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  ☐ 380 Other Personal | Act | ☐ 862 Black Lung (923) | ☒ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability     Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal  ☐ 385 Property Damage | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury     Product Liability | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting  ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment     Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/  **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations  ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare  ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -  ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment  ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities -  ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1331, FEDERAL QUESTION
Brief description of cause:
breach of lease and conversion of rental income

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 811,450.04

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See Instructions):

JUDGE

DOCKET NUMBER

DATE  5-11-7

SIGNATURE OF ATTORNEY OF RECORD  Pamela Carvel

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE