# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## Case No. 07–CV- 00273-***

_____

| | |
|---|---|
| )  | |
| Pamela Carvel, as Citizen, ) | **AMENDED** |
| as Delaware Ancillary Administrator ) | **COMPLAINT** |
| for Agnes Carvel Estate, ) | |
| as Member for Thomas and Agnes Carvel Foundation ) | |
| Plaintiffs ) | |
| v. ) | **DEMAND FOR** |
| William Griffin ) | **JURY TRIAL** |
| Marie Abplanalp ) | |
| Salvatore Molella ) | |
| Robert Davis ) | |
| and ) | |
| John/Jane Doe 1-20 ) | |
| Doe Corp. 1-20 ) | |
| Defendants ) | |

_____)

COMPLAINT FOR CONTINUING CONSPIRACY TO VIOLATE
CONSTITUTIONAL RIGHTS & COMMIT FRAUDS
AND
DEMAND FOR JURY TRIAL

---

**AFFIDAVIT
IN OPPOSITION TO DEFENDANTS' MOTION TO  DISMISS
AND
IN SUPPORT OF PLAINTIFFS' MOTION TO APPOINT A
RECEIVER**

---

Pamela Carvel, appearing *pro se*
PLAINTIFF
28 Old Brompton Road, Suite 158
London SW7 3SS England

US tel/fax  1 954 524 1909

**TABLE OF CONTENTS**

TABLE OF CITATIONS……………………………………………………….………i

AFFIDAVIT IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND
IN SUPPORT OF PLAINTIFFS' MOTION TO APPOINT A RECEIVER …………1

APPOINTMENT OF A DELAWARE RECEIVER OR
    THE DELAWARE ATTORNEY GENERAL'S OFFICE …………………………..3

JURISDICTION AND DUE PROCESS …………………………………………..8

REMEDY TO SERVICE OF PROCESS ……………………………………………14

CONCLUSION ……………………………………………………………………..20

# TABLE OF CITATIONS

**CASES**

*217 Fed. Appx Lee v. Henderson*, 75 F. Supp. 2d 591, 596 (E.D. Tex. 1999)………16

*Adams v Allied* (No. 94-4104 Dist. Ct, E.D. Missouri (1996) …………………………18

*AIG Managed Mkt.*, 197 F.R.D. at 111 …………………………………………………18

*Alston v. Quik Park Garage Corp.*, 1996 WL 547018, at *1 (S.D.N.Y. Sept. 26, 1998) ………………………………………………………………………18

*Ball v. Tompkins*, 41 F. 486, 489 (C.C.) …………………………………………6

*Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978) ……………………………17

*Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir.1984) …………………………………17

*Bracco v. Lackner,* 462 F.Supp. 436,455-56 (N.D. Cal. 1978) ………………………5

*Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir.1989)..10

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ………………10, 11, 14

*Calder v. Jones*, 465 U.S. 783 (1984)……………………………………………10, 11

*California Software Inc. v. Reliability Research. Inc.*, 631 F.Supp. 1356 (C.D.Cal.1986)………………………………………………10

*Cameron v. Groveland Imp. Co.*, 20 Wash. 169, 54 Pac. 1128 (1898)……………..5

*Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995)…………………………………………18

*Core-Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1484 (9th Cir.1993) …………10

*Covington Draw Bridge Co. v. Shepherd*, 21 How. 112, 125 …………………………6

*Crane v. Battelle*, 127 F.R.D. 174, 177-78 (S.D. Cal. 1989) …………………………16

*Data Disc. Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ……………………………………………………………………9, 10

*Dixon v. Barry,* 967 F.Supp. 535, 550 (D.D.C. 1997) …………………………..…5

*Elkins v. Broome*, 213 F.R.D. 273 (M.D.N.C. 2003)………………………………16

*Estelle v. Gamble*, 429 U.S. 97 (1976)………………………………………….....16

*Falfurrias Immigration Co. v. Spielhagen,*
61 Tex. Civ. App. 111, 129 S.W. 164 (1910)...................................................5

*Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1074 (10th Cir. 1995) ...............13

*Freedman's Saving & Trust Co. v. Shepherd,*
127 U.S. 494 , 500-504, 8 S.Ct. 1250.......................................................... 6

*Greenly v. Davis,* Del.Supr., 486 A.2d 669, 670 (1984)...................................12

*Haines v. Carpenter,* Fed. Cas. No. 5,905, 1 Woods, 262, affirmed 91 U.S. 254 ...... 6

*Haines v. Kerner,* 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).........19

*Hanson v. Denckla,* 357 U.S. 235, 253 (1958) ............................................11

*Helicopteros Nacionales de Colombia v. Hall,*
466 U.S. 408, 414-16 & n.9 (1984) ........................................................14

*Henderson v. United States,* 517 U.S. at 672.............................................18

*Hilska,* 217 F.R.D. at 22 ..................................................................19

*Hitz v. Jenks,* 123 U.S. 297, 306 , 8 S.Ct. 143  ...........................................6

*Hutto* v. *Finney,* 437 U.S. 678,687 n. 9 (1978) .............................................5

*Hein v. Cuprum, S.A. de CV.,* 136 F. Supp. 2d 63, 65 (N.D.N.Y. 2001) ...............18

*In re Initial Pub. Offering Sec. Litig.,* 2004 WL 2320364, at *12 (S.D.N.Y. Oct. 15,
2004)......................................................................................................18

*In the Matter of Guy E. McGaughey, Jr ,* 24 F.3d 904, 907 (7th Cir. 1994)..............4

*Ingle v. Jones,* 9 Wall. 486, 498 ...........................................................6

*IPO Sec. Litig.,* 2004 WL 2320364, at *13 .................................................18

*Jordan v. United States,* 694 F.2d 833, 836 (D.C. Cir. 1982) ...........................16

*Karlsson v. Rabinowitz,* 318 F.2d 666, 668-69 (4th Cir. 1963) ...........................16

*Lindsey,* --- F. Supp. 2d ----, 2006 WL 2413720, at *6 ...................................19

*Lisson v. ING Groep* (U.S.C.A. 5th Cir. No. 06-50955; 1:05-CV-852 U. S. Dist. C.W.
Dist. Texas) ..............................................................................................16

*Lujano v. Omaha Public Power Dist.,* 30 F.3d 1032, 1035 (8th Cir. 1994) ...........18

*McCreary v. Vaughn-Basset Furniture*, (1:05-cv-00413-WWD U.S. Dist. Ct. M.D.N.C., "Recommendation of U.S. Magistrate Judge" ...........................16

*McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996) .................17

*Mid-Atlantic Machine & Fabric, Inc. v. Chesapeake Shipbuilding, Inc.*, Del.Super., 492 A.2d 250, 253 (1985) ....................................................................................12

*Moore v. Agency for Int'l Development*, 994 F.2d 874, 876 (D.C. Cir. 1993) .....16, 19

*Newman v. Alabama, 466* F.Supp, 628, 635 (M.D. Ala. 1979). ..........................5

*Ogilvie v. Knox Insurance Co.*, 22 How. 380, 392 ...........................................6

*Omeluk v. Langsten Slip & Batbyqqeri A/S*, 52 F.3d 267, 268 (9th Cir.1995)....... ...9

*Panavision Intern'al L.P. v. Toeppen*, 17 93 8 F. Supp. 616 (C.D. Cal 1996), aff'd, 141 F.3d 1316, 1321 (9th Cir. 1998) 5.........................................................9, 10

*Pellegrin & Levine, Chartered v. Antoine*, 961 F.2d 277, 282-83 (D.C. Cir. 1992)...19

*Plummer & Co. Realtors v. Crisafi*, Del.Super., 533 A.2d 1242, 1244 (1987). .......12

*Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999) ........................19

*Scattergood v. American Pipe & Constr. Co.*, 247 Fed. 712 (E.D.Pa. 1917) ............5

*SEC v. Cherif*, 933 F.2d 403, 414, n. 11 (7th Cir. 1991).....................................5

*SEC v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963)....................................5

*SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972)...............5

*Shepherd v. Pepper*, 133 U.S. 626, 652 , 10 S.Ct. 438 ....................................6

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 n.2 (D.C. Cir. 2000)... ......19

*Stone* v. *City and County of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992)....5, 6

*Thomas v. Knight*, 257 F. Supp. 2d 86, 88 (D.D.C. 2003)................................19

*Underground Electric Rys. Co. v. Owsley*, 176 F. 26 (C.C.A.2d) ........................6

*Union Trust Co. v. Illinois Midland Ry. Co.*, 117 U.S. 434, 455 , 6 S.Ct. 809 ..........6

*Voinche v. Fed. Bureau of Investigation*, 412 F. Supp. 2d 60, 70 (D.D.C. 2006) .....19

*Wallace v. Loomis*, 97 U.S. 146 , 162 ........................................................6

*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) ..........................13

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) ...............13

*Zankel v. United States*, 921 F.2d 432, 438 (2d Cir. 1990)................................17

**STATUTES**

*Delaware Code("Del. C")* ................................................................14

10 *Del. C.* §3104 (c) (3) ..................................................................12

*Delaware District Court's Local Rules* Rule 4.1 ....................…..................14, 15

*Federal Rules of Civil Procedure* (FRCP) Rule 1 ….....................................17

*Federal Rules of Civil Procedure("FRCP")* Rule 4 ....................14, 15, 16, 17

*Federal Rules of Civil Procedure* ("FRCP") Rule 7.1 ................................2

*FRCP* 12(b)(2) and (5) ....................................................................16

*Federal Rules of Civil Procedure* Rule 66..................................................3

*Securities Act [15 U.S.C. §77v(a)]*......................................................4

*Securities Exchange Act of 1934* [15 U.S.C. §77aa]...................................4

**OTHER AUTHORITIES**

Ronald Chester, *Less Law, but More Justice?: Jury Trials and Mediation As Means of Resolving Will Contests*, 37 DUQ. L. REV. 173, 178–81 (1999) .........................8

Jerry Goldman & Kenneth S. Marks, *Diversity Jurisdiction and Local Bias: A Preliminary Empirical Inquiry*, 9 J. LEGAL STUD. 93, 97–99 (1980) ...............…8

Charles Rembar, *The Law of the Land: The Evolution of our Legal System* 71 (1980). 8

*The Choice Between State and federal Court in Diversity Cases in Virginia*, 51 VA. L. REV. 178 (1965)...........................................................................8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### Case No. 07–CV- 00273-***

| | |
|---|---|
| Pamela Carvel, as Citizen, | ) **AMENDED** |
| as Delaware Ancillary Administrator | ) **COMPLAINT** |
| for Agnes Carvel Estate, | ) |
| as Member for Thomas and Agnes Carvel Foundation | ) |
| Plaintiffs | ) |
| v. | ) **DEMAND FOR** |
| William Griffin | ) **JURY TRIAL** |
| Marie Abplanalp | ) |
| Salvatore Molella | ) |
| Robert Davis | ) |
| and | ) |
| John/Jane Doe 1-20 | ) |
| Doe Corp. 1-20 | ) |
| Defendants | ) |
| | ) |

## AFFIDAVIT
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## AND
## IN SUPPORT OF PLAINTIFFS' MOTION TO APPOINT A RECEIVER

1.      This affidavit is made by Pamela Carvel on behalf of Plaintiffs' in opposition to Defendants' Motion to Dismiss and in support of Plaintiffs' Motion to Appoint a Delaware Receiver is based on first hand information acquired during over 17 years of fraud investigation on behalf of Thomas and Agnes Carvel, and from first-hand knowledge of the acts, omissions, and representations made by Defendants in Delaware and outside Delaware.

2.      Defendants "Argument" is on two issues only: 1) personal jurisdiction; 2) service of process (Docket #13, Opening Brief, p. 4). While the lawyer's affidavit quoting a lawyer's affidavit purports to be relevant, in fact nothing in Steven Fink's affidavit addresses the two issued stated in the Argument.

1

3.      Plaintiffs do not here address issues not directed to the Motions at hand because the truth will be evident through discovery of the Defendants acts and ultimate identification of their co-conspirators. Suffice it to say at this point that the recitation of "facts" by the Defendants and their agents is void of the all findings in the Carvels' favor that contradicted the statements used by Defendants, and void of all the findings against the Defendants in four prior criminal investigation by the Attorney General and Federal Bureau of Investigation.

4.      Plaintiffs assert that Defendants' "Preliminary Statement" and "Statement of Facts" are untrue. Defendants alleged position as anything but individuals is unsubstantiated by documents in these filings or anywhere else. Defendants refused repeatedly to provide the mandatory proof of their alleged status at alleged foundation meetings. Moreover, Defendants appear to have destroyed the records in their custody and control as alleged fiduciaries in order to thwart inspection by forensic specialists (see attached Exhibits A69-A104). Defendant failed and refused to provide documents for inspection as required by law. Defendants all swear that they are corporate officers and/or directors, but again, there are no substantiating documents and no corporate disclosure statement pursuant to *Federal Rules of Civil Procedure* ("FRCP") Rule 7.1. (Also see Steven Fink's definition of lawyer for the Defendants Exhibit A-71.)

5.      Defendants' lawyers are improperly paid with the Carvels' restricted charitable gifts, without restraint at this time, and without scrutiny by any Carvel or any court. Also see Appendix A-56 stating at 13, "**Revised budget – shortfall in grants … without reduction in legal expense.**" This illegal purpose is not consistent with the

charitable-purpose restrictions placed by the Carvels, the law, and the Internal Revenue Code.

6.        Defendants' criminal intention was boldly stated in a manifesto for control of the "Thomas and Agnes Carvel Foundation" written by Robert Davis on February 18, 1992 (Appendix A-55) in the midst of the Attorney General's fraud investigations: removing Robert Davis and Mildred Arcadipane **provides family with opportunity to assume control of Foundation, Estate and Agnes' assets.** The stated fraudulent intent, including to deny Agnes (an elder person) her own assets in her lifetime, continues to this day and forms one of the basis for Defendants' harmful acts in other jurisdictions to divert ownership and control of Delaware assets.

## APPOINTMENT OF A DELAWARE RECEIVER OR THE DELAWARE ATTORNEY GENERAL'S OFFICE

7.        Pamela Carvel is sole adjudicated Member of the legitimate Thomas and Agnes Carvel Foundation (Exhibit A105; Thomas Carvel, also named Pamela although those records were stolen and presumably destroyed by Defendants). Pamela Carvel moves this Court to enter an order for appointment of a receiver pursuant to Rule 66 of the *Federal Rules of Civil Procedure,* or to appoint the Delaware Attorney General on behalf of beneficiaries of charities, to marshal, conserve, protect, hold funds, operate and, with the approval of the Court, dispose of any assets, wherever those assets may be found in which Defendants alleged a legal, equitable or beneficial interest in the name of the Thomas and Agnes Carvel Foundation. Plaintiffs' claims for damages are against the Defendants individually.

8.        Defendants previously stayed the Andreas Holding Corp. ownership determination in Delaware so as to gain time to strip the corporate assets in the event

3

Agnes' ownership was returned. (The same was done with two other New York corporations diverting over $25 million.) By time the Andreas matter was returned to Delaware by Westchester Surrogates' Court, there were no assets remaining in Andreas. Over $20 million "disappeared", along with all income there from since 1989 (A-110).

9.    Robert Davis was neither officer nor director of Andreas Holding Corp.; however, he alleged to be president, director and member of the alleged foundation. Lawrence Fay and his law partner Malcolm Wilson (unelected former New York Governor) both alleged to become foundation member, directors and officers. Based on review of records made available, Lawrence Fay was not paid by Andreas Holdings Corp. He did not submit any application to Surrogate's Court. However, Fay was paid without scrutiny and without limit by Defendants from the Carvels' restricted charitable gifts derived from Delaware assets. Pamela Carvel heard Lawrence Fay (Defendants' alleged general counsel) and David Jewell (Defendants' alleged special counsel) admit that the stay was a hoax on the Delaware Chancery because the Andreas issue was not before the Surrogate --- and would never be before the Surrogate. On information and belief, others recorded these conversations. Regrettably, the Delaware Chancery, ignorant of the hoax, quotes that decision as a precedent for others.

10.    Federal courts have an inherent equitable power to appoint a receiver to manage a defendant's assets during the pendency of litigation. *In the Matter of Guy E. McGaughey, Jr.,* 24 F.3d 904, 907 (7th Cir. 1994). Section 22(a) of *the Securities Act [15 U.S.C. §77v(a)]* and Section 27 of the *Securities Exchange Act of 1934* [15 U.S.C. §77aa] confer upon district courts equitable powers to fashion an appropriate remedy, such as the appointment of a receiver, to "effectuate the purpose of the federal securities laws." *SEC*

4

*v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1105 (2d Cir. 1972); *SEC v. Keller Corp.,* 323 F.2d 397, 403 (7th Cir. 1963) (finding appointment of receiver proper for the benefit of defrauded shareholders).

11.     The receiver may recover funds from a non-party in possession of ill-gotten profits and has no legitimate claim to the funds. *SEC v. Cherif,* 933 F.2d 403, 414, n. 11 (7th Cir. 1991). When a corporation is being wrecked by incompetent or unscrupulous officials, or when, because of internal strife or failure of corporate purpose, it faces inevitable disaster, a court of equity has the power to appoint receiver to wind tip its affairs and distribute its assets. The general jurisdiction of equity to appoint receivers for corporations, although much disputed in the past, is now well settled. *Scattergood v. American Pipe & Constr. Co.*, 247 Fed. 712 (E.D.Pa. 1917); *Falfurrias Immigration Co. v. Spielhagen*, 61 Tex. Civ. App. 111, 129 S.W. 164 (1910); *Cameron v. Groveland Imp. Co.*, 20 Wash. 169, 54 Pac. 1128 (1898).

12.     The questions raised here are important to federally controlled issues, including harm to the People by charity fraud and tax fraud. Federal courts possess "whatever powers are necessary to remedy constitutional violations." *Stone* v. *City and County of San Francisco,* 968 F.2d 850, 861 (9th Cir. 1992), citing *Hutto* v. *Finney,* 437 U.S. 678,687 n. 9 (1978). This equitable power includes the capacity to appoint a receiver. *See Dixon v. Barry,* 967 F.Supp. 535, 550 (D.D.C. 1997); *Bracco v. Lackner,* 462 F.Supp. 436,455-56 (N.D. Cal. 1978); *Newman v. Alabama, 466* F.Supp, 628, 635 (M.D. Ala. 1979).

13.     The Ninth Circuit held that "where federal constitutional rights have been traduced, principles of restraint, including comity, separation of powers and

pragmatic caution dissolve,.." *Stone*, 968F.2d at 861. Where a final decree involving the disposition of property is appropriately asked, the court in its discretion may appoint a receiver to preserve and protect the property pending its final disposition. *Wallace v. Loomis*, 97 U.S. 146 , 162; *Union Trust Co. v. Illinois Midland Ry. Co.*, 117 U.S. 434, 455 , 6 S.Ct. 809; *Hitz v. Jenks*, 123 U.S. 297, 306 , 8 S.Ct. 143; *Freedman's Saving & Trust Co. v. Shepherd*, 127 U.S. 494 , 500-504, 8 S.Ct. 1250; *Shepherd v. Pepper*, 133 U.S. 626, 652 , 10 S.Ct. 438,of trust property pending the appointment of a new trustee, *Underground Electric Rys. Co. v. Owsley*, 176 F. 26 (C.C.A.2d); *Ball v. Tompkins*, 41 F. 486, 489 (C.C.); cf. *Haines v. Carpenter*, Fed. Cas. No. 5,905, 1 Woods, 262, affirmed 91 U.S. 254 , or of property which a judgment creditor seeks to have applied to the satisfaction of his judgment, *Covington Draw Bridge Co. v. Shepherd*, 21 How. 112, 125; *Ogilvie v. Knox Insurance Co.*, 22 How. 380, 392; *Ingle v. Jones*, 9 Wall. 486, 498.

14.    Defendant William Griffin is controlling shareholder of Hudson Valley Bank (Complaint Appendix A2). Marie Abplanalp Holcombe is controlling shareholder of Hudson Valley Bank (Complaint Appendix A2). Hudson Valley Bank is used to transmit over $3-400,000 to Westchester Surrogate Scarpino, and to fraudulent transfer Delaware trust property. Salvador Molella (admitted burglar and thief of Carvel property; Exhibit A110) was an employee of Andreas Holdings Corp. Molella used his position of trust to manipulate the assets of Andreas and other Delaware assets after Thomas Carvel's death. Robert Davis was the lawyer who directed the illicit schemes and wrote the manifestos to obstruct Carvel control of Carvel assets (Appendix A55-A58). Defendants have not responded in any form as individuals and are in default.

15.    All Foundation assets are derived from Delaware corporations; or are assets owned or claimed by Delaware successors in interest to Agnes Carvel; or are assets held in trust by Defendants subject to return to the Estate to pay Estate obligations in Delaware pursuant to statute. All acts by Defendants within and outside Delaware are and have been directed at the "disappearance" of these Delaware assets or thwarting their recovery through claims in Delaware.

16.    Currently, these New York identity thieves, who Agnes Carvel and the Attorney General opposed since 1991 (A121-A134), are now the subject of the FIFTH criminal investigation by the New York State Attorney General's office and Federal Bureau of Investigation for political corruption and financial fraud in the apparent over $300,000 bribery of Surrogate Judge Anthony Scarpino in Westchester County, New York, and for theft and charity fraud by the fraudulent transfer to the foundation usurpers' and their business agents of Agnes Carvel's property held in trust by the "Agreement" contract decision in New York.

17.    Pamela Carvel's assistance in the first four successful investigations resulted in three felony convictions for real estate and financial fraud, as well as the forced ouster of two foundation usurpers and their suspension as Thomas Carvel executors and trustees, but not before the fraudsters passed control to their cronies and stripped the Carvels' charities of several million dollars. Arcadipane and Davis were then suspended by the Westchester Surrogate as executor and trustees for theft, forgery and embezzlement charges brought by Agnes and Pamela.

18.    Probate courts have a reputation for bias and corruption (and are the subject of criminal prosecutions in New York). *See* Charles Rembar, *The Law of the*

*Land: The Evolution of our Legal System* 71 (1980) (noting that the New York probate courts have a history as "factories of corruption"); Ronald Chester, *Less Law, but More Justice?: Jury Trials and Mediation As Means of Resolving Will Contests*, 37 DUQ. L. REV. 173, 178–81 (1999) (documenting instances of bias); Jerry Goldman & Kenneth S. Marks, *Diversity Jurisdiction and Local Bias: A Preliminary Empirical Inquiry*, 9 J. LEGAL STUD. 93, 97–99 (1980)) (discussing bias concerns in diversity jurisdiction in general); *The Choice Between State and federal Court in Diversity Cases in Virginia*, 51 VA. L. REV. 178 (1965)) (discussing studies indicating that 40–60 percent of litigants who file diversity cases in federal court cite fear of local bias as a motivating factor).

## JURISDICTION AND DUE PROCESS

19.    Defendants wrongly state the claims asserted. Marie Abplanalp Holcombe is indeed included in the term "Defendants" in all statement of claims and jurisdiction. In the instant proceeding, Defendants availed themselves of Delaware law by persistently and consistently taking actions outside and inside Delaware to divert control and ownership of the Carvels' Delaware assets, ordered actions to be taken, or aided and abetted in actions by their agents and co-conspirators to thwart the identification and recovery of Delaware assets belonging to Agnes Carvel. The shell game of asserting New York jurisdiction to divert litigation, only to bury the litigation and dismiss it in New York, is a common ploy by Defendants used often.

20.    Defendants allege to be the shareholders on Andreas Holdings Corp. Defendants approved and defended at trail the gross waste and mismanagement of that corporation until virtually cash and property was gone. Discovery will identify the precise damage and the co-conspirators. Defendants interfered in each and every legal

8

proceeding relating to Andreas. Defendants aided and abetted two felons in real estate scams. The Attorney General later convicted the felons with Pamela's assistance, but not before costing Agnes several million dollars in losses.

21.     Defendants conspired to steal and conceal unused stock powers for Carvel Corp., a Delaware corporation, and through perjury denied Agnes the benefit of ownership. Defendants persist and continue to deprived Agnes Carvel's Delaware Business Trust of property and income; persist and continue to use extortion tactics to obstruct justice and all investigations against Defendants by obstruction the administration of Agnes Carvel's estate in Delaware and all international jurisdictions; abuse the Carvels' restricted charitable gifts, all of which are derived from Delaware assets, to obstruct all funds from reaching first Agnes Carvel as sole intended beneficiary and elder person, then from reaching Pamela Carvel as Agnes Carvel's sole advocate, sole supporter, and sole successor Foundation Member. Defendants falsely avail themselves of tax-exempt status in Delaware, in other states, federally, and internationally, for the profit of their own businesses from diverted Delaware assets. Discovery will itemize the full extent of the claims outlined.

22.     Plaintiffs need only make a *prima facie* showing of jurisdiction where, as here, the court did not hear testimony or make factual findings. *See id.; Omeluk v. Langsten Slip & Batbyqqeri A/S*, 52 F.3d 267, 268 (9th Cir.1995); *Panavision Intern'al L.P. v. Toeppen*, 17 93 8 F. Supp. 616 (C.D. Cal 1996), aff'd, 141 F.3d 1316, 1321 (9th Cir. 1998) 5.

23.     This showing can be based on the affidavits of knowledgeable witnesses. *See Data Disc. Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th

Cir.1977); *California Software Inc. v. Reliability Research. Inc.*, 631 F.Supp. 1356
(C.D.Cal.1986); *Panavision Intern'al L.P. v. Toeppen*, 17 93 8 F. Supp. 616 (C.D. Cal
1996), aff'd, 141 F.3d 1316, 1321 (9th Cir. 1998) 5. Pamela Carvel has more first hand
knowledge of these issues, as Thomas and Agnes Carvel fraud investigator and as
targeted victims, than anyone submitting an affidavit for Defendants.

24.     Where there is no applicable federal statute governing personal
jurisdiction, federal courts must apply the law of the state in which the district court sits.
*Core-Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1484 (9th Cir.1993); *Panavision
Intern'al L.P. v. Toeppen*, 17 93 8 F. Supp. 616 (C.D. Cal 1996), aff'd, 141 F.3d 1316,
1321 (9th Cir. 1998) 5.

25.     Therefore, the Court "need only determine whether personal jurisdiction
in this case would meet the requirements of due process." *Core-Vent*, 11 F.3d at 1484
(*quoting Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th
Cir.1989)); *Panavision Intern'al L.P. v. Toeppen*, 17 93 8 F. Supp. 616 (C.D. Cal 1996),
aff'd, 141 F.3d 1316, 1321 (9th Cir. 1998) 5.

26.     The defendant need not ever have been physically present in the forum
state for specific jurisdiction to apply. *See Burger King Corp. v. Rudzewicz*, 471 U.S.
462, 476 (1985); *DataDisc*, 557 F.2d at 1288; *California Software*, 631 F.Supp. at 1360;
*Panavision Intern'al L.P. v. Toeppen*, 17 93 8 F. Supp. 616 (C.D. Cal 1996), aff'd, 141
F.3d 1316, 1321 (9th Cir. 1998) 5.

27.     The "effects test" was established in *Calder v. Jones*, 465 U.S. 783
(1984). In *Calder*, the Court held that a reporter and an editor, both Florida residents,
were subject to personal jurisdiction in California for an allegedly defamatory article that

they had written for publication in a national magazine. The Court held that jurisdiction in California was proper because California was "the focal point of both the story and of the harm suffered." *Id.* at 789.

28.      In such circumstances, "an individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause injury in California." *Calder* 465 U.S. at 790. Defendants' actions as individuals are anything but "random, fortuitous or attenuated." *Burger King*, 471 U.S. at 476. Jurisdiction is proper because Defendants' out of state conduct was intended to, and did, result in harmful effects in Delaware.

29.      It is always necessary that there be an act "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Such an act may be a single occurrence, or it may be the continuous presence of the defendant in the state as corporate ownership or control; it may be (and frequently is) something in between. But any time a defendant benefited from the state's legal protections, *Hanson* is satisfied.

30.      Acts outside the state, the Court reasoned, did invoke the benefits and protections of state law, thus satisfying the *Hanson* requirement and permitting the assertion of jurisdiction if such an assertion would otherwise be reasonable. *Panavision Intern'al L.P. v. Toeppen*, 17 93 8 F. Supp. 616 (C.D. Cal 1996), aff'd, 141 F.3d 1316, 1321 (9th Cir. 1998) 5

31.      When personal jurisdiction is challenged by a motion to dismiss, the plaintiff has the burden to show a basis for the Court's jurisdiction over the nonresident

defendant. *Plummer & Co. Realtors v. Crisafi*, Del.Super., 533 A.2d 1242, 1244 (1987). The plaintiff satisfies this burden by making a *prima facie* showing that jurisdiction is conferred by statute. *Mid-Atlantic Machine & Fabric, Inc. v. Chesapeake Shipbuilding, Inc.*, Del.Super., 492 A.2d 250, 253 (1985). Delaware statute applicable sub-sections are 10 Del. C. §3104 (c) (3) – "Personal jurisdiction by acts of nonresidents". Moreover, federal civil RICO claims by an "alien" can be brought in any jurisdiction. Furthermore the body of the claims Plaintiffs assert are for assets stolen from Delaware entities with possible tax consequences in Delaware and federally.

32.     Delaware statute provides in relevant part, a court may exercise personal jurisdiction over any nonresident, who in person <u>or through an agent</u> causes tortious injury in the Delaware by an act or omission in Delaware or outside Delaware. *Del. C.* §3104 (c) (3), (4). The courts and statue are clear, Defendants are not required to be physically in Delaware. Defendants' apparently intended to deny Pamela Carvel the right to confront her accusers in Delaware state court.

33.     All factual inferences must be viewed in a light most favorable to the plaintiff. *Greenly v. Davis*, Del.Supr., 486 A.2d 669, 670 (1984). Among other claims, Plaintiffs assert that several over $1 million in rental income and damages payable in Delaware by a Carvel Corp. a Delaware corporation, to Realities a Delaware Business Trust, was stolen by the acts directed by Defendants.

34.     As evidenced in their motion to remove Pamela Carvel as ancillary administrator without replacing her, Defendants seek to thwart all recovery efforts on behalf of Plaintiffs. The successful hoax on the High Court is now evident by the statement recently submitted by the "judicial trustee" in London (Exhbit A135). The

judicial trustee is an employee paid by the Defendants, who has no intention of defending Agnes Carvel's intentions or any other named beneficiary or creditor. The judicial trustee intends to let the Defendants pursue the claims against the Defendants!! This is equivalent to giving the bank robbers the keys to the bank and firing the security guards!

35.     Although plaintiff bears the burden of establishing personal jurisdiction over defendant, in the preliminary stages of litigation this burden is "light." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a *prima facie* showing that jurisdiction exists. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

36.     To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process. See *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). Defendants seek to eliminate all claims, depriving Plaintiffs of due process, a Constitutional claim asserted by Plaintiffs.

37.     The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant "so long as there exist minimum contacts between the

13

defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

38.     Even when a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state. See *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 & n.9 (1984). The exercise of personal jurisdiction over Defendant would not offend traditional notions of "fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 476.

## REMEDY TO SERVICE OF PROCESS

39.     Pamela Carvel is a *pro se* litigant in this matter because Defendants' obstruct all Carvel funds from reaching the Carvels. Although watching the MULTI-MILLION DOLLAR legal machinations against the Carvel family by Defendants, through their numerous connections, can be instructive, Pamela Carvel has not training in law. Reading the law with normal common sense and mathematical is apparently not enough.

40.     The *Federal Rules of Civil Procedure("FRCP")* Rule 4, as well as the *Delaware District Court's Local Rules* Rule 4.1, and the *Delaware Code("Del. C")* were used to determine the service of the Summons, Amended Complaint and Appendix. The clerk of District Court was unable to say whether the method of service is limited in any way for the Amended Complaint and Summon after the Waiver of Service was not returned. To a *pro se* litigant, mail with return receipt method seemed to comply with the Federal Rules, Delaware Local Rules and Delaware Code.

14

41.     On information and belief, good service was completed when Pamela Carvel filed the Return Receipt postcards with Certificate of Service (see Docket #18). The remedy for a defect in service is to reissue the Summons for service of process before an extended date at the disclosed published addresses of Defendants (Appendix A4).

42.     Plaintiffs assert that duplicative service is not required because Defendants and their agents admitted service twice in their affidavits. Request is herewith made for extended time to serve, and re-issue of duplicate Summons that are herewith provided to the Clerk of the Court, should it be determined by the court that service should be made again for the third time.

43.     On information an belief, good service in good faith on the Defendants as non-residents in Delaware was pursuant to the following:

(a) FRCP Rule 4 (c) (2): service by a U.S. Postal Service employee qualified as service by a non-party;

(b) FRCP Rule 4 (e) (1): service was pursuant to the laws of Delaware, where the District Court is located (see Local Rule below);

(c) FRCP Rule 4 (l): proof of service was provided by U.S. Postal Service Return Receipt postcard that was provided with Certificate of Service (Local Rule 5.2 (a)) to the District Court Clerk (Docket #18) as required by the Local Rules 4.1 (b) referring to Delaware law;

(d) FRCP Rule 4 (m): service by mail was made within 120 days of the original filing;

(e) Delaware Local Rules 4.1(b): service of summons on a non-resident pursuant to 10 Del. C.  § 3104 – "Personal jurisdiction by acts of nonresidents"; applicable sub-sections being (c) (3), (e), (f), or possibly (g) if delivery was refused. Sub-section (f) specifically provides, "the return receipt or other official proof of delivery shall constitute presumptive evidence that the notice mailed was received by the defendant or the defendant's agent"

15

44.    In *McCreary v. Vaughn-Basset Furniture*, (1:05-cv-00413-WWD U.S. Dist. Ct. M.D.N.C., "Recommendation of U.S. Magistrate Judge") the matter before the court was on motions to dismiss ... for lack of personal jurisdiction due to insufficiency of service of process pursuant to *FRCP* 12(b)(2) and (5). Technical noncompliance with Rule 4 does not, however, always require dismissal. Courts have stated, for instance, that dismissal is not always mandated where the necessary parties received actual notice of a suit and where they have not been prejudiced by the technical defect in service. *See Karlsson v. Rabinowitz*, 318 F.2d 666, 668-69 (4th Cir. 1963); *Elkins v. Broome*, 213 F.R.D. 273 (M.D.N.C. 2003).

45.    Moreover, the court should allow a *pro se* litigant a certain amount of lenity that is not afforded to represented parties. *See Estelle v. Gamble*, 429 U.S. 97 (1976). In *Lisson v. ING Groep* (U.S.C.A. 5th Cir. No. 06-50955; 1:05-CV-852 U. S. Dist. C.W. Dist. Texas) "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings." *Moore v. Agency for Int'l Development*, 994 F.2d 874, 876 (D.C. Cir. 1993); *but see, e.g., 217 Fed. AppxLee v. Henderson*, 75 F. Supp. 2d 591, 596 (E.D. Tex. 1999) (arguing that the latitude given to pro se litigants is not unlimited). Actions were not the result of "inexcusable neglect." *Crane v. Battelle*, 127 F.R.D. 174, 177-78 (S.D. Cal. 1989) (noting that a court can consider whether improper service is the result of innocent mistake or inexcusable neglect).

46.    Under such circumstances, the court should follow the rule adopted by other courts which refuse to construe such service requirements "rigidly," *Jordan v. United States*, 694 F.2d 833, 836 (D.C. Cir. 1982), and take "a liberal and flexible

16

construction," *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir.1984), especially where a *pro se* litigant is involved, see id. At 447, as this approach is "sensible and necessary to prevent serious miscarriages of justice," id. at 447, and consistent with the mandate to construe the rules of procedure "to promote 'the just, speedy, and inexpensive determination of every action,'" *Zankel v. United States*, 921 F.2d 432, 438 (2d Cir. 1990) (quoting *Federal Rules of Civil Procedure* (FRCP) Rule 1).

47.     The test is, quoting from *Borzeka v Heckler*, 739 F2d 444, 446-48 (9th Cir 1984): failure to comply with Rule [4(d)'s] personal service requirement does not require dismissal of the complaint if:

> (a) the party that had to be served personally received actual notice,
> (b) the defendant would suffer no prejudice from the defect in service,
> (c) there is a justifiable excuse for the failure to serve properly, and
> (d) the plaintiff would be severely prejudiced if his complaint were dismissed.

48.     At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon   which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978). The court therefore adopted the exception and held that failure to comply with Rule 4(d)(5)'s personal service requirement does not require dismissal of the complaint. *Borzeka,* 739 F.2d at 447.

49.    The question whether a defendant had "actual notice" of the Complaint is one of the four factors governing the exercise of discretion to excuse a defect in service of process, and it is a mitigating factor in a plaintiff's favor. *In re Initial Pub. Offering Sec. Litig.*, 2004 WL 2320364, at *12 (S.D.N.Y. Oct. 15, 2004); see also, *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995). Actual notice of an action militates against a finding of prejudice since the "core function" of service is to supply notice "in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *AIG Managed Mkt.*, 197 F.R.D. at 111, quoting *Henderson v. United States*, 517 U.S. at 672.

50.    Moreover, actual notice requires defendants to have clear knowledge that an action has been brought against them. *IPO Sec. Litig.*, 2004 WL 2320364, at *13 (defendants had actual notice of the related allegations from the outset of the litigation and actively participated in the action); *Hein v. Cuprum, S.A. de CV.*, 136 F. Supp. 2d 63, 65 (N.D.N.Y. 2001) (defendant alleged defective service, but the court found actual notice where she actively litigated and defended the matter over a period of two years); *Alston v. Quik Park Garage Corp.*, 1996 WL 547018, at *1 (S.D.N.Y. Sept. 26, 1998) (summons and complaint had defendant's name misspelled; however, defendant requested three extensions to answer the complaint and engaged in settlement negotiations with plaintiff. The court found the misspelling a "harmless error.").

51.    In *Adams v Allied* (No. 94-4104 Dist. Ct, E.D. Missouri (1996), a showing of good cause requires at least "excusable neglect" -- good faith and some reasonable basis for noncompliance with the rules.  See *Lujano v. Omaha Public Power*

*Dist.*, 30 F.3d 1032, 1035 (8th Cir. 1994); *Pellegrin & Levine, Chartered v. Antoine*, 961 F.2d 277, 282-83 (D.C. Cir. 1992).

52.       Courts consistently interpreted the Supreme Court's instruction in *Haines* as encompassing all filings submitted by *pro se* litigants, not just their pleadings. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *see also Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 n.2 (D.C. Cir. 2000). *See, e.g., Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999) (holding that "[c]ourts must construe pro se filings liberally"); *Voinche v. Fed. Bureau of Investigation*, 412 F. Supp. 2d 60, 70 (D.D.C. 2006) (observing that "[t]his Court gives *pro se* parties the benefit of the doubt and may ignore some technical shortcomings of their filings" and applying the *Haines* rule to a plaintiff's summary judgment motion).

53.       The D.C. Circuit emphasized that "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings." *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993). Pursuant to *Moore*, courts have adhered to the basic premise that "rules governing service of process should not be enforced with draconian rigidity where courts have not first informed *pro se* plaintiffs of the consequences of failing to effect proper service and where defendants are in no material way prejudiced by a minor defect in the manner in which service of process was attempted." *Lindsey*, --- F. Supp. 2d ----, 2006 WL 2413720, at *6 (citing *Thomas v. Knight*, 257 F. Supp. 2d 86, 88 (D.D.C. 2003) ("[n]ormally, the Court would give a *pro se* plaintiff an opportunity to perfect service of process"); *Hilska*, 217 F.R.D. at 22 (citing *Moore* and denying motion to dismiss a *pro se*

plaintiff's complaint for insufficient service of process where plaintiff had not received minimal notice of the consequences of failing to make proper service).

## CONCLUSION

54.    Thomas Carvel was found dead the day before he was going to fire secretary Mildred Arcadipane and lawyer Robert Davis. It was recently discovered that Thomas Carvel's death ceritifcate was falsified to evade an autopsy. Instead of being unemployed on Monday morning, Mildred Arcadipane, Robert Davis, and their co-conspirators, by forgery and other frauds, stole control of everything the Carvels owned or earned for over 50 years – to the exclusion of Agnes Carvel, joint asset owner and sole intended beneficiary of Tom. There has never been litigation between any Carvel family members. **All litigation** was fabricated by Defendants against Agnes Carvel, and against Pamela Carvel for assisting her aunt, in furtherance of their theft of ALL Carvel assets.

WHEREFORE, Plaintiffs move the Court to deny Defendants'Motion to Dismiss and to grant Plaintiff's Motion to Appoint a Receiver.


October 29, 2007


/s./ Pamela Carvel                          .

Pamela Carvel, appearing *pro se* for lack of funds
28 Old Brompton Road, Suite 158
London W7 3SS England, U.K.
US tel/fax 1 954 524 1909

20