IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Pamela Carvel, as Citizen, as Delaware Ancillary Administrator for Agnes Carvel Estate, as Member for Thomas and Agnes Carvel Foundation<br><br>Plaintiffs<br><br>v.<br><br>William Griffin, Marie Abplanalp, Salvatore Molella, Robert Davis and John/Jane Doe 1-20 Doe Corp. 1-20<br><br>Defendants | C.A. No. 07-CV-00273 |

### AFFIDAVIT OF STEVEN J. FINK

STATE OF NEW YORK    )
                                          ) ss.:
COUNTY OF NEW YORK  )

I, STEVEN J. FINK, affirm under penalty of perjury as follows:

1.  I am a member of the law firm Orrick, Herrington & Sutcliffe LLP ("Orrick"), counsel to Defendants William Griffin, Marie Abplanalp Holcombe and Salvador Molella (the "Defendants"). I have been admitted *pro hac vice* to practice before the Court for purposes of the above-captioned matter. I submit this reply affidavit in further support of the Defendants' motion to dismiss.

2.  David Jewell, formerly an Orrick partner and outside litigation counsel to The Thomas and Agnes Carvel Foundation (the "Foundation"), died in January 2002. Lawrence Fay died in the Fall of 2001.

3.  On March 9, 2006, Pamela Carvel, *pro se*, and counsel to the Foundation and Leonard M. Ross, as ancillary administrator c.t.a. of the Estate of Agnes

1

Carvel, appeared before the Honorable Dora L. Irizarry of the United States District

Court for the Eastern District of New York for proceedings in the matter of *Pamela

Carvel v. Carvel Foundation Inc.*, 06-MC-0005 (DLI).  A true and correct copy of the

transcript of that proceeding is attached hereto as Exhibit 1.

     I declare under penalty of perjury that the foregoing is true and correct.

Steven J. Fink

Sworn to and subscribed before me this
13ᵗʰ day of November, 2007

Notary Public

ALISON FRANCES SWAP
Notary Public, State of New York
No. 02SW6154070
Qualified in New York County
Commission Expires October 23, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2007, a copy of the foregoing was electronically

filed and was also caused to be served on the following as indicated:

### VIA FEDERAL EXPRESS

Pamela Carvel
28 Old Brompton Road, Suite 158
London SW7 3SS
England
United Kingdom

_____
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com

1

```
1                   UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
2
3      - - - - - - - - - - - - - - X
                                    :
4      PAMELA CARVEL,
       EXECUTRIX
5                                        MISC-06-005 (DLI)

6          Plaintiff,

7              -against-              :

8                                        United States Courthouse

                                         Brooklyn, New York
9      CARVEL DEVELOPMENT
       FOUNDATION, INC.
10
           Defendant.               :
11     - - - - - - - - - - - - - - X     March 9, 2006

12                     TRANSCRIPT OF PROCEEDINGS
                    BEFORE THE HONORABLE DORA IRIZARRY
13                   UNITED STATES DISTRICT JUDGE

14     APPEARANCES:

15     For the Plaintiff:   PAMELA CARVEL, PRO SE
                            28 Brompton Road #158
16                          London SW7 3SS
                            England
17
       For the Defendant:  ORRICK HERRINGTON & SUTCLIFFE, LLP
18                          666 Fifth Avenue
                            New York, NY 10103-0001
19                          BY:  STEVEN FINK, ESQ.
                                 ALISON F. SWAP, ESQ.
20
                            BLANK ROME LLP
21                          The Chrysler Building
                            405 Lexington Avenue
22                          New York, NY 10174-0208
                            BY:  EVE RACHEL MARKEWICH, ESQ.
23                               of counsel

24     Court Reporter:     Marsha Diamond
                           225 Cadman Plaza East
25                         Brooklyn, New York
                           718-330-7687
```

1

2

3        Proceedings recorded by mechanical stenography, transcript produced by computer.

4        THE CLERK:  Carvel versus Carvel Development

5 Foundation, Inc.

6        Docket No. 06MC00005

7        THE COURT:  Counsel, can you please step in.

8 Plaintiffs at this table and defense at the other. Counsel,

9 please state your appearance.

10       MS. CARVEL: I am Pamela Carvel.  I am the executrix

11 of the estate of Agnes Carvel probated in London, England and

12 I am appearing pro se.

13       THE COURT:  Good morning, ma'am.

14       MS. CARVEL:  Good morning.

15       MR. FINK: Steven Fink from the law firm of Orick and

16 I am representing proposed intervenor.

17       MS. MARKEWICH: Your Honor, I am Eve Rachel Markewich

18 from Blank Rome.  I represent Leonard Ross, the ancillary

19 administrator for the estate of Agnes Carvel.

20       THE COURT:  This matter is here on an order to show

21 cause.  The plaintiff is seeking to enforce certain foreign

22 orders with respect to the estate of Agnes Carvel, and in

23 addition, is seeking to get reimbursement for certain expenses

24 that she alleges she had with respect to the care of

25 Agnes Carvel and she is seeking to do that against various

3

1    properties that are part of the Carvel estate here in New York

2    State as well as in Florida.  That has been opposed by the

3    Carvel Foundation and others also acting on behalf of the

4    matters -- the probate matters here in the United States.

5         For the record, Ms. Carvel, I do want to let you

6    know that we did receive the papers that you filed earlier

7    this week.  The Court has reviewed them as well as the other

8    documents in this case. The Court issued an order to show

9    cause why this matter should not be transferred to Weschester

10   County Surrogate's Court. So I will give you an opportunity to

11   address the Court with respect to that matter understanding,

12   Ms. Carvel, that the Court has reviewed the papers that you

13   submitted earlier this week which consisted of, approximately,

14   70 pages, including all of the exhibits.

15              MS. CARVEL:  Yes.

16              THE COURT:  Yes.

17              MS. CARVEL:  Just let me clarify something. Your

18   Honor, the intervenors that come here are not the Carvel

19   Foundation.  The Carvel Foundation that was part of the

20   English judgment is a foundation in Florida that has never

21   been given notice of any of the New York proceedings. Mr. Fink

22   alleges to represent people who took control of the Thompson

23   Agnes Carvel Foundation.  After my uncle's death I am the sole

24   legitimate member of the legitimate Thomas and Agnes

25   Foundation, and it has been a point of contention with them

4

1  for the last 15 years. I just don't want you to think that

2  he's representing the people on the other side of the caption.

3  The Carvel Foundation in Florida was part of the English

4  matter which is now final judgment res judicata and they

5  agreed with the proceedings in England.

6        With regard to your order to show cause where

7  international matters are concerned, a New York ancillary

8  administration does not have authority and Westchester

9  Surrogates Court was already requested by the Foundation

10  usurpers to take jurisdiction over the worldwide debits and

11  administrative expenses of the estate.  Westchester Surrogates

12  Court already denied that jurisdiction and Westchester

13  Surrogates Court said that it should be taken to appropriate

14  jurisdictions and it would only take jurisdiction over New

15  York ancillary administrative expenses. Neither the foundation

16  usurpers nor Mr. Ross' ancillary administrator have standing

17  in England and in New York they have -- they have failed to

18  give any notice whatsoever to the beneficiaries that are named

19  in the will that was never contested in the United Kingdom by

20  any party. Mr. Fink's clients did appear in England when the

21  will was being probated and it was never contested by them.

22        THE COURT:  Ms. Carvel, you lay out all of this

23  background in your papers and that's why I referenced the

24  papers in commencing these proceedings. What is at issue here

25  is why it is that I should not for the sake of judicial

1  economy, since it's very clear that all pending matters have

2  been referred to the surrogate court in Westchester County,

3  why this matter also should not be transferred to that court.

4        MS. CARVEL:  Well, what I was trying to explain,

5  Your Honor, Westchester has already declined jurisdiction over

6  anything but the New York ancillary administration. This has

7  already been before Westchester and they have declined that.

8  This is not included in Mr. Ross' ancillary administration. He

9  did not include it in his accounting, and it is not within his

10  jurisdiction to determine the debits or administrative

11  expenses outside of New York. The beneficiaries that have

12  interests under the will in England have been excluded.  They

13  have never been noticed on any of the proceedings in

14  Westchester County, so that it is their rights that are being

15  enforced through England that have been ignored in

16  Westchester. This matter has never been before Westchester and

17  when Westchester was asked to take jurisdiction over non-New

18  York expenses it declined. So because there's a diversity of

19  citizenship here -- because there is a long history of the

20  federal court administering matters or taking jurisdiction

21  over matters that are not -- that are estate matters but that

22  involve creditors or beneficiaries that are claims, that is a

23  matter that does -- there are a lot of cases that have been

24  kept. I couldn't find any that weren't kept. This is not --

25  this is not the administration of a probate. Nothing's been

6

1 probated in New York. This is the claims of creditors and
2 beneficiaries against the funds that are in New York, and
3 those are the estate's funds in New York. Westchester doesn't
4 have this matter in front of --

5      THE COURT: Any matters concerning estate funds are
6 probate matters.

7      MS. CARVEL: The cases that I have read explain that
8 the claims against the estate funds are well within the
9 jurisdiction of the court, and I included those in my papers,
10 and that since the beneficiaries of the estate are not given
11 notice of the proceedings in Westchester and were not given
12 notice of any of the past proceedings in Westchester they are
13 not New York resident beneficiaries. The Florida foundation
14 -- the Carvel Foundation in Florida has never received any
15 notice of any of the proceedings, although it is the named
16 beneficiary under the will.

17      THE COURT: Let me ask you something. The
18 defendants have indicated in their papers that there were two
19 orders to show cause prohibiting you from pursuing the action
20 in any other courts. Although the orders did not appear to be
21 in the exhibits that were filed with the court, I'm going to
22 assume that counsel would not make that kind of representation
23 if those orders were not, in fact, in existence. It seems to
24 me that by coming here and filing an action here that's a
25 violation of those orders to show cause prohibiting you from

7

1   pursuing any further actions. What do you have to say about

2   that?

3         MS. CARVEL:  Well, I thought I addressed that in my

4   papers as well. I researched that the state courts could not

5   make any rulings that would prohibit somebody from exercising

6   their rights under the federal laws, and I think it even goes

7   to 18 United States Code, I think it is 341, conspiracy

8   against civil rights.  That if somebody has a right under the

9   United States laws, that other parties cannot stop them from

10  exercising that right. Westchester Surrogates Court from the

11  cases I read did not have the ability in a proceeding that is

12  not before it.  This matter is not before Weschester

13  Surrogates Court as we sit here today, and then to prohibit me

14  from going to absolutely any other court anywhere in the

15  world, particularly a federal court in the United States, to

16  seek redress and to have jurisdiction asserted over the

17  matter, the cases that I looked at were very clear about

18  federal court not being dictated to by state courts and state

19  courts not having the ability to arrest the rights of persons

20  to go into a federal court.

21        THE COURT: But by the same token, the federal courts

22  can also not infringe upon certain rights of the states as

23  well. Let me just hear from defense counsel on these issues.

24        MR. FINK:  Thank you, Your Honor.

25        When we filed our letter we did try to submit --

1    THE COURT: I think I misspoke. I think the order to

2  show cause was with the exhibits. What was not with the

3  exhibits were any orders that were issued pursuant to those

4  orders to show cause, so I apologize. I misspoke when I said

5  that earlier.

6    MR. FINK: Very well.

7    Your Honor, the order to show cause with the

8  temporary restraining order, I want to make sure that you had

9  that. I have a courtesy copy.

10    THE COURT: No. The temporary restraining order we

11  did not get for some reason.

12    MS. MARKEWICH: I represent Leonard Ross, the

13  ancillary administrator. They were annexed to our papers, our

14  letter dated February 6th, we annexed the exhibits. Mr. Ross'

15  letters testamentary and the orders to show cause containing

16  the temporary restraining orders, both from Judge Austin in

17  the Nassau Supreme Court and Surrogate Starpino

18  S-T-A-R-P-I-N-O.

19    MR. FINK: Those are also annexed to our --

20    THE COURT: I am sorry. I see that. I did miss

21  that. I apologize.

22    MS. MARKEWICH: Both of those remain in effect today

23  -- through and beyond today. There have been no orders of

24  either court limiting those temporary restraining orders.

25    THE COURT: So let me have counsel then address the

1  issues that have been raised.

2         MR. FINK:  Thank you, Your Honor.

3         Because I know you have read the papers I am not

4  going to go into the background, unless you would like that.

5         THE COURT:  I don't think that is necessary.

6         MR. FINK:  Thank you.

7         The only point I would make on this issue is Carvel

8  starts on as to who is who. My client Thomas and Agnes Carvel

9  Foundation is a New York not for property corporation.  It was

10  named as the residuary beneficiary under wills executed by

11  Thomas and Agnes Carvel in February of 1988 and has been

12  recognized by the surrogates court as such.  And in the Carvel

13  litigations the surrogates court has awarded to my client the

14  assets of the estate of Agnes Carvel subject only to the

15  payment of debts and administration expenses.  That is who I

16  am.  That is why we seek to intervene, Your Honor.

17         The Carvel Foundation Inc., which Pamela Carvel made

18  reference to, that is that entity of which it is our

19  understanding that Pamela Carvel controls, and at which she

20  was a director for a number of years. That entity was named as

21  the remainder beneficiary of a subsequent will of Agnes Carvel

22  which the surrogates court has held was in breach of an

23  agreement entered into by Thomas and Agnes which said that

24  their estates would absolutely come to my client.  I hope that

25  is helpful.

1    THE COURT: Now, what is the status of the

2 Westchester action at this point?

3    MR. FINK: We have been litigating there for 15

4 years. There is an accounting proceeding which Ms. Markewich's

5 client commenced, ancillary administrator of Agnes' estate, an

6 accounting procedure which she commenced last year which

7 Ms. Carvel is a participant and that has been scheduled for

8 trial in May of this year. The assets that Ms. Carvel tried to

9 take through the proceedings in New York Nassau Supreme Court

10 were $9 million of the assets that Ms. Markewich's client, the

11 New York ancillary administrator, marshaled and which

12 constitutes the portion of the res administered right now by

13 the surrogates court. Yesterday we were in surrogates court,

14 Your Honor, on the Foundation's contempt application to have

15 Ms. Carvel held in both civil and criminal contempt as a

16 result of her filings in this court in violation of that

17 court's December 29th temporary restraining order.

18    THE COURT: What were the results of those two days'

19 proceedings?

20    MR. FINK: We put on evidence, Your Honor, and the

21 court took the matter under advisement.

22    THE COURT: Okay.

23    MR. FINK: Your Honor, what I would like to do is to

24 focus just briefly on the subject matter jurisdiction issue.

25    THE COURT: Yes.

1       MR. FINK: And before we get to this question of the

2  probate exception there is a predicate which is whether or not

3  any facts have been alleged that could establish diversity

4  jurisdiction in the first instance.

5       So, Your Honor, the initial question is whether or

6  not the facts have been alleged that could establish diversity

7  jurisdiction in the first instance. No such facts have been

8  alleged, and Your Honor, I would submit to you that they

9  cannot be. The plaintiff in this proceeding is

10 Pamela Carvel, executrix of the estate of Agnes Carvel, and

11 what she's asking this court to do is to enforce a judgment

12 against the estate of Agnes Carvel. Now, she has not put the

13 estate on the -- Agnes Carvel on the caption, but Your Honor,

14 it is clearly on the other side of the beat. It is the

15 judgment debtor here, and the law couldn't be more clear that

16 for the diversity purposes the domicile of both the executrix

17 of the estate and estate are one and the same and that at

18 domicile of the decedent. So, Your Honor, there could not

19 diversity here in the first instance.

20      If you ever got past that question, however, we

21 think that the probate exception to the diversity jurisdiction

22 clearly would apply here, and basically, Your Honor -- and

23 that is a doctrine that there's a lot of law out here. It

24 does get a little convoluted, but the basic parameters are

25 fairly clear, and what it says here is that no proceeding in

12

1  federal court can interfere with the administration of a res

2  or which a state court has already exercised jurisdiction.

3  And the cases are clear that once a fiduciary brings an

4  accounting proceeding in state court, that that is an in rem

5  proceeding giving rise to the factual predicate for this

6  exception.

7       THE COURT:  Can I just interrupt you for a one

8  moment?

9       (Pause in the proceeding)

10      THE COURT:  I am sorry to interrupt you, Mr. Fink.

11      MR. FINK:  Thank you, Your Honor.

12      THE COURT:  Do you want to read back to where

13 Mr. Fink left off before I interrupted him.

14      (Record read)

15      MR. FINK:  So Mr. Ross brought his accounting

16 proceeding long before Angela Carvel brought this proceeding

17 here. Now, in trying to analyze what is the proceeding that

18 she brought here, it is pretty clear what it is.  It is a

19 judgment enforcement proceeding, and she's already

20 demonstrated by her actions what she is trying to accomplish.

21 She came very close in the proceeding that she had in Supreme

22 Court Nassau County to taking $9 million of the assets that

23 Mr. Ross -- without notice to anybody -- without notice to the

24 foundation -- surrogates court has already held it is entitled

25 to the asset -- without notice to Leonard Ross who is the

1 person who marshaled those acts and without notice to the
2 surrogates court. What the cases say, Your Honor, Beach versus
3 Rome and the other cases, is that any step that would
4 interfere with the in rem proceeding in state court, including
5 by effecting distribution of the assets under the jurisdiction
6 of the state court, is something that falls within this
7 probate exception. And Your Honor, is it hard to imagine a
8 greater interference with the surrogates exercise of its
9 jurisdiction over the assets marshaled by Mr. Ross than having
10 Ms. Carvel take them out of the estate from under that court's
11 jurisdiction?

12      So, Your Honor, we think that the there is no basis
13 here for the Court to exercise subject matter jurisdiction and
14 that matter belongs properly, if anywhere, in the surrogates
15 court.

16      The last thing I will say, and I don't think
17 Your Honor needs to go into the merits because of this
18 jurisdictional defect, but if you were to do so I would just
19 ask that if you look carefully at the papers that Ms. Carvel
20 submitted, including there is an affirmation of Mr. Cash, one
21 of her U.K. lawyers attached to it, it makes reference to the
22 fact that the judgment was obtained in response to something
23 called a Form 9A Admission, and Your Honor, which it looks to
24 us like it is pretty clearly a confession of judgment, and
25 under the enforcement judgment act -- judgment by confession

1  is something that could not be domesticated in the State of

2  New York in any event under CPLR.

3          THE COURT: Yes.

4          MS. MARKEWICH:  My name is Eve Markewich.  I

5  represent Leonard Ross who is the ancillary administrator of

6  the estate of Agnes Carvel. We annexed to our letter to the

7  Court February 6th, Mr. Ross' letters of administration issued

8  by the surrogates court, and it is very clear from these

9  letters that the intent of the surrogate was that Mr. Ross

10  marshaled the assets and that they remained in New York State.

11  That is, of course, the usual expectation for an ancillary

12  administrator. We quoted in our letter a portion of a decision

13  issued by the surrogate in which he made very clear that

14  Mr. Ross is, in fact, the only individual who is authorized to

15  collect assets on behalf of the estate of Agnes Carvel. And

16  Ms. Pamela Carvel is attempting to take that language, which

17  is really quite simple, and to turn it into a violation of her

18  rights to due process. That is not what the surrogates said,

19  nor what was it intended.  Ms. Carvel individually certainly

20  has the right to go into court -- into the surrogates court,

21  that is where the probate assets are at the moment, and to

22  assert her rights to whatever assets she believes she is

23  entitled to. She has not done so.

24          She made claim for the ancillary administrator for

25  precisely the same items that she now says are embraced in the

1   U.K. judgment pre-death services that she rendered to
2   Agnes Carvel, post death expenses that she said she was
3   responsible for on behalf of the estate. Those claims were
4   rejected by Mr. Ross as being without sufficient evidentiary
5   foundation, and Ms. Carvel had the right to compel a
6   proceeding in the surrogates court demanding that those claims
7   be tried, and she did not do so as a result of surrogates
8   court procedure.  However, Mr. Ross' final accounting, which
9   is going to be tried before the surrogate beginning May 1st,
10  will embrace those claims and at that time Ms. Carvel who is
11  representing herself in that proceeding will have every right
12  to assert bone fides of those claims to any extent that she
13  desires.

14          Finally, Your Honor, Ms. Carvel has stated that the
15  judgment that is here at issue is, as she puts it, not within
16  Mr. Ross' accounting. Well, the reason for that is that
17  Mr. Ross was never given notice of this judgment. The first
18  notice that Mr. Ross received of the existence of this
19  judgment was when Ms. Carvel went into Nassau County ex parte
20  purporting to represent the estate of Agnes Carvel which she
21  does not do in the State of New York, and the Bank of New York
22  that held some of the assets gave us notice that she was
23  trying to attach those assets.  So the fact that the judgment
24  is not within the accounting proceeding as a judgment, per se,
25  it is simply because we were never given notice.

1    To the extent that this matter is transferred by

2   this court it will, I am certain, be folded into the

3   accounting proceeding in front of Judge Starpino. As I said,

4   the underlying issues have already been raised by Ms. Carvel

5   in the surrogates court, and I am sure Your Honor is familiar

6   with the Moser case in the Second Circuit which sets out very

7   succinctly the argument that Mr. Fink made regarding the

8   probate exception at 294 F.3d 335. That is a 2002 case.

9   Your Honor, may not be aware that a judge of this court, the

10  Eastern District of New York, in the Celia Kates K-A-T-E-S,

11  executor of the estate of Celia Kates, Philip Parash

12  P-A-R-A-S-H, as recently as November 2005, Judge Hurley issued

13  a decision very much on point in which there was a claim

14  brought in the district court against a fiduciary and the

15  court ruled that all of the claims were, in fact, embraced in

16  the accounting proceeding in the probate court. That case is

17  legally indistinguishable from this one, Your Honor, and based

18  on that -- based on the Moser case, based on the -- you know,

19  the years of history of the probate exception, we would ask

20  that this case be dismissed summarily.

21    Again, as Mr. Fink has pointed out, there are

22  procedural deficiencies. I think among lawyers perhaps we

23  might agree that the case was never properly commenced. There

24  was no summons issued, but whatever the procedural vehicle is

25  that the Court is most comfortable with, either the case

17

1   should be dismissed or it should be transferred at the very

2   least.  Certainly, it should be suspended until the accounting

3   proceeding is concluded and whatever appeals arise from that.

4           Thank you, Your Honor.

5           THE COURT: I am just going to ask counsel's

6   indulgence for five minutes or so. I am going to take

7   everything under advisement and I will be right back. Please

8   remain seated.

9           (Pause in the proceeding)

10          THE COURT:  You may be seated.

11          Thank you, for your patience.

12          I have considered the arguments and the papers that

13  have been submitted, and in light of all of that, this matter

14  is remanded to the surrogate in Westchester County.  An order

15  will be issued shortly detailing the Court's reasons.

16          Ms. Carvel, let me just say this, that there was a

17  lack of notice in this case.  You seem to have a history of

18  proceeding in courts without giving proper notice. I believe

19  that that happened down in the Florida court with the related

20  matter as well when you sought to enforce the foreign judgment

21  in that court.  That's not how it works in this country. There

22  has to be notice to opposing counsel when you decide to take

23  action, but this matter is referred to the Westchester County

24  Surrogates Court to join the proceedings that are already

25  underway in that court, and the Court will issue an order to

18

1  that effect shortly within the next few days.

2      MS. CARVEL:  Could I just say in all of the

3  proceedings, because I am acting pro se and if you notice

4  $13 million is at that table and I can't even get a legal fee

5  paid, but in all of the proceedings I have gone to the clerks

6  of the court and asked them what is the procedure I should

7  use, and I came here to the pro se desk of the federal court

8  and asked them what procedure should be used, and nobody has

9  ever said anything about summons and it has always been the

10  parties that are in the proceeding.

11      THE COURT:  Ms. Carvel, I would suggest that you not

12  make any other statements that would amount to

13  misrepresentations to the Court. You have already had problems

14  with misrepresenting to the Court. I am very familiar with the

15  pro se clerks in this courthouse. They are outstanding.  They

16  do an exceptional job.  You are not the only pro se litigant

17  in this courthouse.  I have a substantial number of very

18  complicated cases, including class actions, where the

19  litigants are pro se. Pro se litigants, just because they are

20  pro se, doesn't mean that they are not bound by the same rules

21  of evidence and procedures as attorneys are bound. No pro se

22  clerk in this building would ever tell a pro se litigant that

23  they could proceed without notice or omit that information, so

24  I find that statement to be highly suspect.

25      These proceedings are terminated.

19

1        Thank you, very much, all of you, for your patience

2   and I am sorry that it did not appear on the calendar

3   downstairs.  That was simply a ministerial oversight, but we

4   appreciate that the parties did contact the court since we

5   were available to hear this.  It was definitely on our

6   calendar.

7        Thank you, very much.

8        (Proceedings adjourned as above set forth)

9                *   *   *   *   *   *   *   *

10

11

12

13

14

15

16

17                I HEREBY CERTIFY THAT THE FOREGOING

18                IS A TRUE AND ACCURATE TRANSCRIPT

                  FROM MY NOTES IN THIS PROCEEDING.

19

20                *Marsha Diamond*

                  OFFICIAL COURT REPORTER

21                U.S. DISTRICT COURT

22

23

24

25

MARSHA DIAMOND, CSR
OFFICIAL COURT REPORTER