IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| PAMELA CARVEL, as Citizen, as Delaware Ancillary Administrator for Agnes Carvel Estate, as Member for Thomas and Agnes Carvel Foundation, | : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civ. Action No. 07-273-JJF |
| WILLIAM GRIFFIN, MARIE ABPLANALP, SALVATORE MOLELLA, ROBERT DAVIS, deceased, JOHN/JANE DOE 1 through 20, and DOE CORP. 1 through 20, | : : : : : : | |
| Defendants. | : | |

Pamela Carvel, as Citizen, as Delaware Ancillary Administrator for Agnes Carvel Estate, as Member for Thomas and Agnes Carvel Foundation, London, England. Pro se Plaintiffs.

Chad Michael Shandler, Esquire, Richards, Layton & Finger, Wilmington, Delaware. Attorney for Defendants William Griffin, Marie Abplanalp Holcombe, and Salvador Molella.

**MEMORANDUM OPINION**

November 18, 2008
Wilmington, Delaware

Farman, District Judge

Presently before the Court is the Motion To Dismiss and supporting Memorandum of Defendants William Griffin ("Griffin"), Marie Abplanalp Holcombe ("Abplanalp"), and Salvador Molella ("Molella") (collectively Defendants) and Plaintiffs ("Plaintiffs") opposition thereto.  (D.I. 12.)  Also before the Court are Plaintiff Pamela Carvel's Motion To Appoint A Receiver and Praecipe.  (D.I. 19, 30.)  For the reasons set forth below, the Court will grant the Motion To Dismiss, will deny the Motion To Appoint A Receiver, and will decline to issue a subpoena duces tecum.  Finally, the Court will dismiss the case for lack of jurisdiction.

## I.  BACKGROUND

Pamela Carvel, filed this Complaint, followed by an Amended Complaint, as citizen, Delaware ancillary administrator for the Agnes Carvel Estate[1] and as a member of the Thomas and Agnes Carvel Foundation ("Foundation")[2] against Defendants Griffin,

---

[1]On September 30, 2008, the Delaware Court of Chancery removed Pamela Carvel as ancillary administrator of the Agnes Carvel Estate.  The Thomas and Agnes Carvel Foundation v. Carvel, Civil Action No. 3185-VCP (Del. Ch. Sept. 30, 2008).

[2]The Foundation is a New York not-for-profit corporation whose primary purpose is to provide grants to charitable organizations providing health and education services for children and adolescents in Westchester County, New York.  (D.I. 14.) Its offices are located in Yonkers, New York.  (Id.)  The Foundation is the residuary beneficiary of the Thomas Carvel

-1-

Abplanalp, Molella, Robert Davis ("Davis")³, John/Jane Does, and

Doe Corps.⁴  (D.I. 1, 2, 7, 8.)  Plaintiffs proceed pro se.

Plaintiffs assert jurisdiction pursuant to 18 U.S.C. § 1965 and

28 U.S.C. § 1331 and allege causes of actions under 18 U.S.C. §§

241, 242, 245, 371, 1111, 1117, 1341, 1343, 1344, 1346, 1512,

1951, 1952, 1961, et seq., 1962, 1964(a) and(c), 2314, and 2315;

26 U.S.C. §§ 6504 and 6655; 28 U.S.C. §§ 455 and 1343; and 42

U.S.C. §§ 1981, 1982, 1983, 1985, 1886, and 1988 for violations

of the First, Fifth, Ninth, and Fourteenth Amendments.

Plaintiffs also claim supplemental state claims pursuant to 28

U.S.C. § 1367 for fraud and conspiracy to commit fraud.  The

Amended Complaint describes the "Nature of Action" as "a pattern

---

Estate and by court decree is entitled to the residue of the
Agnes Carvel Estate.  (D.I. 17, ¶ 5.)

³The Amended Complaint indicates that Davis is deceased.
(D.I. 8, ¶ 21.)  Service has not been effected on his estate.  At
one time, Davis was a member, officer and director of the
Foundation.

⁴Ice cream magnate Thomas Carvel ("Thomas") predeceased his
wife Agnes Carvel ("Agnes") in 1990.  The couple was childless.
Pamela Carvel is the niece of Thomas, and is Agnes' niece by
marriage.  Through estate documents, the Carvels established the
Foundation.  When Agnes died on August 4, 1998, she was a
resident and domiciliary of the United Kingdom.  Upon the
Carvel's deaths, litigation in both estates ensued in New York,
Florida, and the United Kingdom, and has been virtually
continuous.  Pamela Carvel was Agnes' guardian immediately prior
to Agnes' death and was the United Kingdom representative of
Agnes' estate until she was judicially removed from the position
on June 11, 2007, due to a conflict of interest.  (D.I. 17, ex.
5.)

-2-

of criminal enterprises to intentionally evade taxes and commit

tax fraud . . . theft and abuse of the identify of the Carvels'

charities with the intention to defraud the Carvels and others .

. . intentional acts to harm Plaintiffs in order to cover-up and

retain control of stolen assets . . . fraudulent conversion of

Carvel assets to the co-conspirators; and for related illicit

acts in a pattern of conspiracy in criminal enterprises." (D.I.

7, ¶ 2.) Defendants move for dismissal for lack of personal

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and

insufficient service of process pursuant to Fed. R. Civ. P.

12(b)(5).

The alleged facts relevant to Defendant's Motion To Dismiss

are as follows:[5] This action arises from violations of U.S. law

and violations of state laws of Delaware, New York, and Florida

involving continuing conspiracies of two or more persons. (D.I.

7, ¶ 6.) "The largest claim (over $200 million) to recover

assets of the . . Agnes Carvel Estate is in Delaware. Therefore

the largest theft of assets and greatest fraud against Agnes

Carvel, her successors in interest, the Estate, its Delaware

administrator, its beneficiaries, and its creditors, is in

Delaware. Delaware is the correct venue because the apparent

---

[5]The Amended Complaint contains numerous other allegations
that do not reference Delaware.

frauds, including perjured statements to the Delaware Chancery . . . were intended to prevent the recovery of the value of Agnes' Delaware corporate interests, the most substantial asset claimed by Plaintiffs." (Id. at ¶ 13.) "Defendants' apparent crimes and acts that defrauded Agnes Carvel in Delaware also defrauded the Estate's ancillary administration and Agnes' successors in interest in Delaware; cheated and abused legitimate charity in Delaware and elsewhere; defrauded Delaware claimants and creditors, and violated Delaware statutes." (Id. at ¶ 14.) With regard to the RICO allegations, "apparent criminal enterprises, bribery and political corruption in New York denied Plaintiffs the right to redress grievances in New York, and denied that New York law protects a foreign fiduciary or Delaware ancillary administration interests. (Id. at ¶ 16.) With regard to Griffin and Molella, they retained, directed and authorized payment of Delaware attorneys to thwart by perjury Agnes Carvel's claims and rights under Delaware. (Id. at ¶¶ 18, 20.) Defendants intentionally interfered with business relationships, contractual relationships and obstructed the constitutional rights of the Estate's Delaware administration. (Id. at ¶ 22.) Defendants knowingly and intentionally committed acts and omissions over Delaware assets and effecting Delaware claim issues, in collusion with co-conspirators in Delaware and elsewhere. (Id. at ¶ 23.)

-4-

Defendants knew their harmful acts in Delaware and outside Delaware would damage Plaintiffs' claims and assets in Delaware. (Id.) Defendants' knowing, malicious, reckless, and unwarranted obstruction of payment income, debts and expenses to Plaintiffs in Delaware, Florida and New York, is in furtherance of obstruction of the identification and prosecution of a conspiracy to defraud. (Id. at ¶ 97.) Defendants' and Doe Defendants' intentional interference with a business relationship and intentional obstruction of the rights of Agnes Carvel and her successors in interest, Agnes' Estate and its Delaware ancillary administration, and fiduciary Pamela Carvel, was an attempt to prevent Pamela's pursuit of substantial Delaware claims by obstructing funds to inflict financial hardship, so that Defendants may divert and profit from the conspiracy in criminal enterprises. (Id. at ¶ 108.)

Counts 1 through 3 allege fraud and conspiracy to commit fraud in contradiction and in violation of Delaware, Florida, and New York laws. (Id. at ¶ 82.) Count 4 alleges tortious interference with contracts. Count 5 alleges tortious interference with plaintiffs' business expectancy. Count 6 alleges abuse of process. Counts 7 through 20 allege conspiracy to interfere with rights. Counts 23 through 28 allege RICO violations, and specifically that Defendants were knowledgeable

that their fraudulent transfer of Carvel assets was a tortious act under Delaware, Florida, and New York state laws. (<u>Id</u>. at ¶ 124.) Plaintiffs seek discovery to identify, quantify, and assert damages by Defendants; disaffirmance pursuant to New York law of all individual and professional acts taken by Defendants; discovery to determine the extent of Defendants' criminal acts recovery of misappropriated property estimated at $300 million and treble damages; denial and revocation of the tax-exempt status under which Defendants operate to fraudulently convert assets and commit tax fraud; and to compel Defendants to pay penalties and interest for all actions in abuse of Carvel charities' tax-exempt status and to disgorge Defendants of their ill-gotten gains.

## II. **MOTION TO DISMISS**

Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5) for lack of personal jurisdiction and insufficient service of process, respectively. They argue that not only are Plaintiffs unable to meet their burden to demonstrate jurisdiction exists under Delaware's long arm statute, but also that it would be manifestly unfair and inconsistent with traditional notions of fair play and substantial justice to subject them to the jurisdiction of this Court. Defendants also contend that Plaintiffs have failed to

-6-

properly effect service upon them.   Plaintiffs oppose the

Motion.[6]

## A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(2) allows the Court to

dismiss a suit for lack of jurisdiction over the person.   Two

requirements, one statutory and one constitutional, must be

satisfied for personal jurisdiction to exist over a defendant.

Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.,

295 F. Supp. 2d 400, 403 (D. Del. 2002).   "First, a federal

---

[6]Plaintiffs argue that Defendants: (1) availed themselves of
Delaware law by persistently and consistently taking actions
outside and inside Delaware to divert control and ownership of
the Carvel's Delaware assets; (2) ordered actions to be taken, or
aided and abetted in actions by their agents and co-conspirators
to thwart the identification and recovery of Delaware assets
belonging to Agnes Carvel; (3) as alleged shareholders of Andreas
Holdings Corp. ("Andreas"), approved and defended at trial the
gross waste and mismanagement of Andreas until all cash and
property was gone; (4) interfered in Andreas legal proceedings;
(5) aided and abetted two felons in real estate scams; (6)
conspired to steal and conceal unused stock powers for Carvel
Corp., a Delaware corporation, and through perjury, denied Agnes
Carvel the benefit of ownership; (7) persist and continue to
deprive Agnes Carvel's Delaware Business Trust of property and
income; (8) persist and continue to use extortion tactics to
obstruct justice and all investigations against them by
obstructing the administration of Agnes Carvel's Estate in
Delaware and all international jurisdictions; 9) abuse the
Carvels' restricted charitable gifts, all of which are derived
from Delaware assets; 10) obstruct all funds from reaching Pamela
Carvel as Agnes Carvel's sole advocate, sole supporter, and sole
successor Foundation member; and 11) falsely avail themselves of
tax-exempt status in Delaware, in other states, federally, and
internationally, for the profit of their own business from
diverted Delaware assets.

-7-

district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Id. (citing Fed. R. Civ. P. 4(e)). The Court must, therefore, determine whether there is a statutory basis for jurisdiction under the Delaware long arm statute. Id. (citing Del. Code Ann. tit. 10, § 3104(c)). "Second, because the exercise of jurisdiction must also comport with the Due Process Clause of the United States Constitution, the Court must determine if an exercise of jurisdiction violates [Defendants'] constitutional right to due process." Id. (citing International Shoe Co. v. Washington, 326 U.S. 310 (1945)).

A district court may exercise either general or specific jurisdiction over a defendant, for purposes of personal jurisdiction. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (citations omitted). General jurisdiction exists where the defendant maintains continuous and systematic contacts with the forum. Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Specific jurisdiction is proper only when the "cause of action arises out of [the] defendant's forum-related activities, such that the defendant 'should reasonably anticipate being haled into court' in that forum." Remick, 238 F.3d at 255.

-8-

"Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction." Id. (citing Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Therefore, Plaintiffs must come forward with facts sufficient to establish by a preponderance of the evidence that this Court has personal jurisdiction over Defendants. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 65 (3d Cir. 1984); see also IMO Indus. Inc. v. Kiekert AG, 155 F.3d 254, 257 (3d Cir. 1998) ("the plaintiff bears the burden of proving that personal jurisdiction is proper").

Plaintiffs may establish jurisdictional facts through sworn affidavits or other competent evidence." Time Share Vacation Club, 735 F.2d at 66 n.9. "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93 n.6 (3d Cir. 2004) (citations omitted).

-9-

**B. Jurisdictional Facts**

In response to Defendants' Motion, Plaintiffs submitted transcripts for Foundation annual meetings held in White Plains, New York in 2002, 2004, and 2005; 1999 Order from the Supreme Court of the State of New York, County of Westchester granting Pamela Carvel's petition seeking an order of mandamus; financial documents of Andreas Holdings; 1990 Davis affidavit executed in New York; forensic document examination report of findings prepared in New York regarding the authenticity of Thomas Carvel signatures; 1991 letter from the New York attorney general to the Foundation's board members regarding an investigation of inappropriate practices by the Foundation; letter from the New York attorney general to Davis, at a New York address, setting forth the office's position regarding certain Foundation activities subject to investigation and threatening legal action if Foundation members, directors, and officers Davis and Mildred Arcadipane did not resign; and witness statement of Guy Greenhouse, judicial trustee of the Agnes Carvel Estate, recommending that the Foundation be made a party to proceedings in legal proceedings in United Kingdom. (D.I. 21.) None of the documentation refers to actions taken in Delaware nor is any directed to an address at a Delaware location.

-10-

Griffin, Abplanalp, and Molella are members and directors of the Foundation.  (D.I. 14, 15, 16.)  Griffin is the president of the Foundation and Molella is the vice-president.  (D.I. 14.)  Griffin lives and works in the State of New York, and is a lawyer, admitted to practice law there.  (D.I. 14.)  Griffin is also the chairman of Hudson Valley Bank ("HVB"), a New York corporation headquartered in the State of New York.  (D.I. 14.)

Molella lives in Palm Beach County, Florida and is retired. (D.I. 15.)  Abplanalp lives in Westchester County, New York and is not employed.  (D.I. 16.)

In 1995, Agnes and Pamela Carvel, as directors, filed a lawsuit in Delaware Chancery Court to establish ownership of Andreas.  Plaintiffs contend that attorney Lawrence Fay ("Fay") submitted a perjured affidavit during the proceedings.  Neither Griffin nor Molella were parties to the Andreas proceeding filed in the Delaware Chancery Court by Pamela and Agnes Carvel.[7] (D.I. 14, 15.)  Fay did not submit the alleged perjured affidavit or participate in the proceeding as outside general counsel to the Foundation.  (D.I. 17, ¶ 16.)  At the time, he was not a Foundation member or director.  (D.I. 24.)  Fay was outside general counsel to the Foundation during 1994-1995 and also

---

[7]Abplanalp become a director and member of the Foundation some nine to ten years after the commencement of the Andreas litigation in Delaware.

-11-

represented Davis when he was the executor of the Thomas Carvel Estate. (D.I. 14, 15.) The Foundation was not a party to the proceedings and did not appear in the proceedings. (D.I. 17, ¶ 15.) Neither Griffin nor Molella recalled that Fay filed an affidavit during the proceeding. (D.I. 14, 15.) The Delaware Court of Chancery stayed the proceeding pending a determination of the ownership of Andreas by the Westchester County, New York Surrogate's Court. (D.I. 17, ¶ 17.) The issue was not adjudicated in the Westchester Surrogate's Court but neither Pamela Carvel nor Agnes Carvel's Estate moved to lift the stay. (Id.)

At the time the Complaint was filed, Pamela Carvel was the Delaware ancillary administrator of the Agnes Carvel Estate. On August 27, 2007, the Foundation commenced a proceeding in the Delaware Chancery Court to remove Pamela Carvel as the Delaware ancillary administrator of the Estate. (D.I. 14.) Griffin verified the Foundation's Petition, but he is not a party to the Delaware Removal Proceeding. (D.I. 14.) Neither Molella nor Abplanalp are parties to the Delaware proceeding. (D.I. 15, 16.) Griffin, Molella, and Abplanalp have not traveled to Delaware in connection with the Delaware Removal proceeding. (D.I. 14, 15, 16.) On September 30, 2008, Pamela Carvel was removed as the Delaware ancillary administrator for the Agnes Carvel Estate.

Griffin, Molella, and Abplanalp aver that they do not regularly engage in or solicit business in Delaware, derive substantial revenue from services or things used or consumed in Delaware nor engage in a persistent course of conduct in Delaware. (D.I. 14, 15, 16.) Griffin, Molella, and Abplanalp have no interest in Delaware real property. (D. I. 14, 15, 16.) Similarly, Griffin avers that the Foundation does not regularly engage in or solicit business in Delaware, derive substantial revenue from services or things used or consumed in Delaware, engage in a persistent course of conduct in Delaware, or have an interest in Delaware real property. (D.I. 14.)

## C. Personal Jurisdiction

Defendants argue that the Amended Complaint fails to satisfy any section of Delaware's long arm statute sufficient to invoke personal jurisdiction. The Delaware long arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent: (1) transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in the State; (3) causes tortious injury in the State by an act or omission in the State; (4) causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course

-13-

of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; (5) has an interest in, uses or possesses real property in the State; or (6) contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing. Del. Code Ann. tit. 10, § 3104(c). The foregoing provisions are construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal service within the State." Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-57 (Del. Super. Ct. 1997).

The Amended Complaint does not allege that Defendants: (1) transacted any business or performed any character of work or service in Delaware as required by § 3104(c)(1); (2) contracted to supply services or things in Delaware as required by § 3104(c)(2); (3) had an interest in, used or possessed real property in Delaware as required by § 3104(c)(5); or (4) contracted to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within Delaware as required by § 3104(c)(6).

-14-

Plaintiffs argue, however, that §§ (c)(3) and (4) are applicable. They assert, among other claims, that by acts directed by Defendants, over one million dollars payable in Delaware to Realities, a Delaware business trust, was stolen by Carvel Corp., a Delaware corporation. With regard to the 1995 Andreas litigation, Plaintiffs contend that Pamela Carvel heard two individuals who are not Defendants in this action, admit the Delaware Chancery Court's stay was a hoax because the Andreas issue would never be heard by the Westchester Surrogate. Plaintiffs further argue that Defendants seek to thwart their recovery efforts as evidenced by the Petition filed by the Foundation in the Delaware Chancery Court to remove Pamela Carvel as the ancillary administrator and the successful "hoax" in the United Kingdom High Court wherein the judicial trustee recommended that the Foundation be allowed to intervene in court proceedings there. Plaintiffs argue that they need only make a prima facie showing or jurisdiction when the court does not hold a hearing or make factual findings. They further argue that Pamela Carvel's affidavit is more than sufficient to meet their burden.

Contrary to Plaintiffs' position, Pamela Carvel did not submit an affidavit. While Plaintiffs submitted a document entitled "Affidavit" and signed by Pamela Carvel, its contents

-15-

are neither sworn to, affirmed, or verified. Moreover, the document contains conclusory allegations without factual support. Plaintiffs must provide "sworn affidavits or other competent evidence" to satisfy their burden. Stranahan Gear Co. v. NL Indus., 800 F.2d 53, 58 (F.2d 1986) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984)). This, they have failed to do. Additionally, exhibits Plaintiffs submitted do nothing to support their position. Indeed, virtually every document references acts that took place in New York, not Delaware, and fail to support Plaintiffs' position of injury in Delaware.

The Court notes that Griffin verified the Foundation's Petition filed in the Delaware Chancery Court to have Pamela Carvel removed as the Delaware ancillary administrator. (D.I. 14.) This case, however, is filed against Griffin, individually, not as an officer of the Foundation. Regardless, Plaintiffs argue that the filing of the Petition is evidence that Defendants seek to thwart Plaintiffs' recovery efforts. The original Complaint was filed on May 21, 2007, and the Petition in the Delaware Chancery Court was filed on August 27, 2007, three months later.

Minimum contacts exist when the defendant's conduct is purposefully directed toward the forum state. Burger King Corp.

v. Rudzewicz, 471 U.S. 462, 475 (1985).  The conduct must be more

than merely "random," "fortuitous," or "attenuated."  Id.,

(citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774

(1984)).  If the conduct is such that a defendant could

reasonably foresee being haled into the forum state's court, then

the minimum contact threshold has been met.  See World Wide

Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980).  The

record does not support a finding of specific jurisdiction.

Plaintiffs cannot now claim that Griffin's sole act of verifying

a Petition, filed after this case was commenced and not by him

but by the Foundation, is sufficient to establish personal

jurisdiction over him.  Taking such an action would "clearly

offend traditional notions of fair play and substantial justice."

International Shoe, 326 U.S. at 316.

Section 3104(c)(4) is considered as a general jurisdiction

provision.  See Bell Helicopter Textron, Inc. v. C & C Helicopter

Sales, Inc., 295 F. Supp. 2d 400, 405 (D. Del. 2002); Boone v. Oy

Partek AB, 724 A.2d 1150, 1155 (Del. Super. Ct. 1997) (citing

Outokumpu Eng'g Enterprises, Inc. v. Kvaerner EnviroPower, Inc.,

685 A.2d 724, 727-28 (Del. Super. Ct. 1996)).  A defendant is

subject to general jurisdiction who has continuous and systematic

contacts with the forum state.  Helicopteros Nacionales de

Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984); BP Chemicals

-17-

Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254, 262 (3d Cir. 2000).

The Amended Complaint fails to allege that Defendants regularly conducted business in Delaware, engaged in a persistent course of conduct within Delaware, or derived substantial revenue for services or things used or consumed in Delaware to support an assertion of general jurisdiction over them in Delaware. See BP Chemicals, 229 F.3d at 262-63. According to the Amended Complaint, Griffin and Abplanalp are residents of New York and Molella is a resident of Florida. The record reflects a lone contact with Delaware, when Griffin verified a petition that the Foundation filed in the Delaware Chancery Court after the commencement of this litigation. This act is not the kind of activity that constitutes "substantial and continuous local activity" necessary to subject Defendants to general personal jurisdiction. See Sanitec Indus., Inc. v. Sanitec Worldwide, Ltd., 376 F. Supp. 2d 571, 574 (D. Del. 2005). In the instant case, Plaintiffs have not met their burden to establish that Defendants had minimum contacts or continuous or substantial contacts with Delaware to exercise general jurisdiction over them.

For the foregoing reasons, the Court finds that record contains insufficient evidence to allow the Court to exercise

-18-

either general or specific general personal jurisdiction over Defendant. Plaintiffs contend, however, that their RICO allegations are sufficient to vest jurisdiction over Defendants.

**D. RICO**

Plaintiffs posit that civil RICO claims by an "alien" can be brought in any jurisdiction. Defendants argue that an "alien" is not allowed to sue a defendant in any district and there is no jurisdiction over Defendants under 18 U.S.C. § 1965(a).

The RICO jurisdiction statute, 18 U.S.C. § 1965, has been interpreted differently by federal circuit courts over which provision of 18 U.S.C. § 1965 authorizes nationwide service of process, § 1965(a) or § 1965(d). The Fourth and Eleventh Circuits have held it is authorized by § 1965(d) which allows "[a]ll other process" in a RICO action to be served in "any judicial district in which such person resides, is found, has an agent or transacts his affairs." Republic of Panama v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 942 (11th Cir. 1997); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 627 (4th Cir. 1997). Hence, a RICO defendant "need only have sufficient minimum contacts with the United States to satisfy due process." American Trade Partners, L.P v. A-1 Int'l Importing Enters., Ltd., 757 F. Supp. 545, 556 (E.D. Pa. 1991).

-19-

The majority of the other deciding circuit courts, after thorough analysis, have concluded that all sections of 1965 must be read to give effect to all its sections and concluded that a district court has jurisdiction to entertain a civil RICO claim only where personal jurisdiction based on minimum contacts are first established as to at least one defendant pursuant to 18 U.S.C. § 1965(a). See FC Inv. Group LC v. IFX Markets, Ltd., 529 F.3d 1087, 1099 (D.C. Cir. 2008). Once minimum contacts is established as to at least one defendant, the nationwide service of process provision of 18 U.S.C. § 1965(b) enables a plaintiff to bring all members of a RICO conspiracy before a single court. Id.; See Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226, 1229 (10th Cir. 2006); PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71-72 (2d Cir. 1998); Lisak v. Mercantile Bancorp., Inc., 834 F.2d 668, 671 (7th Cir. 1987); Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 538 (9th Cir. 1986). See also Boone v. Thompson, No. 02-CV-1580, 2002 WL 31478834, *3 (E.D. Pa. Nov. 1, 2002) (requiring sufficient contacts with the forum state to establish personal jurisdiction over RICO defendant). The United States Court of Appeals for the Third Circuit has not addressed the issue.

After considering the decisions of the circuit courts, this Court adopts the reasoning of the majority of the circuits that

-20-

for nationwide service to be imposed under § 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators. FC Investment Group LC v. IFX Markets, Ltd., 2008 WL 2468431 at *9. Because this Court is without personal jurisdiction over Defendants, it also is without RICO jurisdiction over them.[8]

## III. MISCELLANEOUS MATTERS

### A. Motion To Appoint A Receiver

Pamela Carvel moves for an order of appointment of receiver or, in the alterative, "to appoint the Delaware Attorney General on behalf of beneficiaries of charities, to marshal, conserve, protect, hold funds, operate and, with the approval of the Court, dispose of any assets, wherever those assets may be found in which Defendants alleged a legal, equitable or beneficial interest in the name of the . . . Foundation." (D.I. 20, ¶ 7.) Defendants oppose the motion.

The appointment of a receiver is an extraordinary remedy and is appropriate "only on a showing of fraud or the imminent danger

---

[8]The Court finds it unnecessary to address the issue of defective service inasmuch as it does not have personal jurisdiction over Griffin, Abplanalp, and Molella.

of property being lost, injured, diminished in value or squandered, and where legal remedies are inadequate." McDermott v. Russell, 523 F. Supp. 347 (E.D. Pa. 1981), aff'd, 722 F.2d 732 (3d Cir. 1983); see Maxwell v. Enterprise Wall Paper Mfg. Co., 131 F.2d 400 (3d Cir. 1942); In re National Credit Mgmt. Group, L.L.C., 21 F. Supp. 2d 424, 463(D.N.J. 1998).

The Court does not have personal jurisdiction over three Defendants and service has not been effected on the remaining Defendants, most of whom are unidentified, and one who is deceased. Moreover, the Foundation is not a party to this action, and it appears from her motion that Pamela Carvel seeks to place the Foundation in receivership, something she has attempted in at least one other court. See Carvel v. Cuomo, Civ. No. 07-1034-LEK/RFT (N.D.N.Y. June 26, 2008) ("As is evident from Plaintiff's claims of relief, she seeks to dissolve the Foundation, have its assets held by a receiver, obtain an accounting, rescind all transactions by the Foundation, etc."). The Court will not paint the lily, Pamela Carvel fails to make a showing that she is entitled to the extraordinary relief requested. The Court, therefore, will deny the Motion.

**B. Praecipe**

Plaintiffs filed a Praecipe for issuance of a subpoena duces tecum to the Sheriff of New Castle County to obtain discovery

-22-

from Defendants. (D.I. 30.) Rule 45 of the Federal Rules of Civil Procedure sets forth the procedure for issuance of a subpoena when seeking discovery documents from non-parties. Here, the Praecipe seeks issuance and service of a subpoena upon Defendants. The procedure to obtain discovery from parties is set forth in Rules 26 through 37 of the Federal Rules of Civil Procedure. Although Plaintiffs proceed pro se, they are required to follow the applicable Rules when seeking discovery. Additionally, they are required to finance and pay for their discovery requests. Therefore, the Court will not issue a subpoena to the Sheriff of New Castle County.

## IV. PROBATE EXCEPTION

Finally, the Court considers that Plaintiffs challenge the disposition of estate property while couching it as other issues. Pursuant to the probate exception to federal diversity jurisdiction, a federal court has no jurisdiction to probate a will or administer an estate even where diversity requirements are met. See Markham v. Allen, 326 U.S. 490, 494 (1946). Moreover, federal courts lack the power to actually probate a will, administer a decedent's estate, or assume in rem jurisdiction over property that is in the custody of the probate court. Three Keys Ltd. v. SR Utility Holding Co., 540 F.3d 220, 227 (3d Cir. 2008). Otherwise, the probation exception does not apply. Id.

-23-

In the present case, it is evident that exercise of jurisdiction "would require the District Court to 'endeavor[] to dispose of property that is in the custody of a state probate court,' which is prohibited by the probate exception." Three Keys Ltd., 540 F.3d at 230 (quoting Marshall v. Marshall, 547 U.S. 293, 312 (2006). Indeed, it is evident that this action is an attempt to dispose of property that is the subject of an ongoing probate proceeding. See In re Carvel, 2 A.D.3d 847 (N.Y.A.D. 2d Dep't Dec. 29, 2003) (noting that the wills of Thomas and Agnes Carvel "created a testamentary trust for the benefit of the surviving spouse, the income of which was to be paid to the surviving spouse and the remainder to the Thomas and Agnes Carvel Foundation . . . the sole residuary beneficiary."). The Foundation is the residuary beneficiary of the Thomas Carvel Estate and by court decree is entitled to the residue of the Agnes Carvel Estate. (D.I. 17, ¶ 5.) Moreover, with regard to the Agnes Carvel Estate, the Westchester County Surrogate's Court has (1) exercised custody and control over it; (2) found the Foundation to be the sole beneficiary of the residual Estate; (3) issued restraining orders prohibiting Pamela Carvel from filing actions in other courts affecting the assets and property of the Estate; and (4) issued other decisions affecting the distribution and administration of the Estate. See Carvel v. Carvel Found., Inc., No. 06-MC-0005(DLI) at 5 (E.D.N.Y. Mar. 29, 2006).

-24-

The Complaint calls for the exercise of in rem jurisdiction over the property in the custody of the Westchester County Surrogate's Court and, therefore, the probate exception applies. Accordingly, the Court will dismiss the case as it lacks jurisdiction to proceed.

**V.  CONCLUSION**

For reasons discussed above, the Court will grant Defendants' Motion To Dismiss and will deny Pamela Carvel's Motion To Appoint A Receiver.  (D.I. 12, 19.)  The Court declines to issue the subpoena duces tecum.  (D.I. 30.)  Finally, the Court finds that it lacks jurisdiction and will dismiss the case for want of jurisdiction.